Gloria M. STODDARD et al., Plaintiffs,

v.

Dean FISHER, M.D., et al., Defendants.

Civ. A. No. 11–168.

United States District Court,
D. Maine, S. D.

July 27, 1971.

---

Donald F. Fontaine, Robert E. Mittel, William F. Julavits, Portland, Me., Louise Lander, New York City, for plaintiffs.

Ruth L. Crowley, Keith N. Edgerly, Asst. Attys. Gen., Augusta, Me., for defendants.

Before COFFIN, Circuit Judge, and GIGNOUX and CAFFREY, District Judges.

## OPINION

COFFIN, Circuit Judge.

Plaintiffs have filed a civil rights action, pursuant to 42 U.S.C. § 1983, on behalf of themselves and others similarly situated, Fed.R.Civ.P. 23(b) (2), seeking injunctive relief, damages, and a declaratory judgment, pursuant to 28 U.S.C. § 2201. Jurisdiction is invoked under 28 U.S.C. §§ 1331, 1340, 1343(3), and a three-judge district court has been convened, pursuant to 28 U.S.C. § 2281. King v. Smith, 392 U.S. 309, 311–313, 88 S.Ct. 2128, 20 L.Ed.2d 1118 (1968). Plaintiffs challenge, on statutory and constitutional grounds, a regulation set forth in the Maine Public Assistance Payments Manual, Ch. II, § C, p. 2, which authorizes employees of the state Department of Health and Welfare to extend Aid to Families with Dependent Children (AFDC) benefits to needy families in which the father is absent because he has been drafted into military service, but not to families in which the father is absent because he has enlisted in the military. The facts have been stipulated.[1]

The individual plaintiffs are both mothers with small children whose fathers are serving as enlisted men away from home. The military dependency allowances afforded both families are inadequate, and both families meet the financial need requirements to receive AFDC benefits. The sole reason why both families have been denied benefits is that the fathers' continued absence results from their enlistment in the military. Maine seeks to economize by withholding assistance from the needy families of enlistees whom it views as having chosen voluntarily to be under-employed away from their homes for an indefinite, but less than permanent time. According to the state's theory, only families whose fathers have been involuntarily or permanently separated from their families are eligible for AFDC.

Plaintiffs' primary attack has been a statutory one. Maine participates in the AFDC program established by the Social Security Act of 1935, 42 U.S.C. §§ 601–644. Under this program, financed with matching funds and administered by the states, financial assistance is provided for dependent children, 42 U.S.C. § 601. A "dependent child" is defined by the

---

1. Plaintiffs have waived any claim for damages against defendants individually and seek only retroactive payment of any AFDC payments to which they are entitled. Defendants have agreed that plaintiffs will be entitled to retroactive payment of benefits if it is determined that they have been illegally withheld.

federal statute as an age-qualified, "needy child * * * who has been deprived of parental support or care by reason of the death, continued absence from the home, or physical or mental incapacity of a parent," and who is living in a relative's home. 42 U.S.C. § 606(a). States that choose to participate in this program must submit for approval a plan of administration to the Secretary of Health, Education, and Welfare (HEW). 42 U.S.C. § 601. The plan must conform with the requirements of the Act specified in 42 U.S.C. § 602 and with the regulations promulgated by HEW. One statutory requirement, with which the state must comply, provides "that aid to families with dependent children shall be furnished with reasonable promptness to all eligible individuals." 42 U.S.C. § 602(a) (10).

Plaintiffs contend that this last provision means that Maine must furnish aid to all needy families who meet the federal eligibility requirements. They say that Maine must aid all children who fit within the state's financial determination of need, are living with a proper relative, are within the proper age group, and have a parent who is continually absent from the home. The state, taking a position apparently endorsed by HEW, argues that the statute merely sets the outer limits of eligibility; that it does not require the states to aid all individuals who might fall within those limits; and that the state is free to write its own narrower standards of eligibility so long as they are constitutional and do not contradict any of the federal standards. Thus, it claims it may—but it is not required to—assist the needy, age-qualified families of enlistees who are continually absent from the home.[2] We must decide whether, as to the case at hand, the federal statute sets mandatory eligibility requirements for the states or allows the states to establish their own, more restrictive, requirements.

We begin by recognizing the explicit options given to a state to decide (a) whether it will participate at all in the AFDC program, 42 U.S.C. § 601; (b) what criteria shall determine a family to be in need, King v. Smith, *supra* at 318 n. 14, 88 S.Ct. 2128; and (c) what resources shall be made available to the total program, 42 U.S.C. § 603, as well as maximum amounts to be made available for any one family, Dandridge v. Williams, 397 U.S. 471, 90 S.Ct. 1153, 25 L.Ed.2d 491 (1970). Beyond these basic areas of state option, some legislative history has accumulated to suggest that states may adopt age cut-offs lower than those set forth in the statute.[3] There is also meager legislative history suggesting that, despite an extensive statutory listing of relatives with whom a dependent child could live, states may choose to exclude children living with certain relatives.[4]

Moreover, legislative history suggests that in 1935 Congress did contemplate that the states would impose, in addition to the federal standards, further eligibility requirements, particularly regarding the moral fitness of applicants. Re-

---

2. According to the affidavit of a law student assistant, employed by Pine Tree Legal Assistance in the summer of 1970, 21 states indicated, in response to a questionnaire, that they furnished AFDC benefits to the families of all continually absent servicemen. The state does not dispute that it could offer plaintiffs AFDC benefits if it chose to do so.

   Of the remaining states, 21 give no aid to servicemen's families; two assist the families of draftees and enlistees who have enlisted to avoid the draft; and two, Maine and Idaho, assist only the families of draftees. Six states did not respond to the survey. HEW has obviously approved all of these differing plans.

3. The permissive language found in Senate and House reports in connection with amendments in 1939, 1956, 1964, and 1965 expanding age coverages is documented in Comment, AFDC Eligibility Requirements Unrelated to Need: The Impact of King v. Smith, 118 U.Pa.L.Rev. 1219, 1231–32 (1970). [Hereinafter Requirements Unrelated to Need.] See also McClellan v. Shapiro, 315 F.Supp. 484 (D.Conn.1970) (3-judge court); Digesualdo v. Shea, Nos. C–1827, C–1967 (D. Col. March 1, 1971) (3-judge court).

4. Requirements Unrelated to Need, at 1232–33.

quirements Unrelated to Need, *supra* note 3, at 1230–33. Since 1935, however, Congress has modified its attitude toward welfare so that it is no longer regarded as charity to give only to the "deserving" poor but is now a right to which all eligible persons are entitled. These changes of attitude can be seen in the disappearance of moral character standards as legitimate requirements for eligibility. King v. Smith, *supra* at 320–327, 88 S.Ct. 2128; Requirements Unrelated to Need, at 1231.

Additional limitations on the states' authority to restrict eligibility for AFDC have also appeared since 1935. The number of specific federal requirements with which states must comply, enumerated in 42 U.S.C. § 602, has grown considerably. Requirements Unrelated to Need, at 1231. Moreover, Congress has acquiesced in a regulation promulgated by HEW, Condition X, which provides that the Secretary will approve state AFDC plans only if they are rational in light of the purposes of the Act. Note, Welfare's "Condition X", 76 Yale L.J. 1222 (1967). There is no specific statutory authorization for this ambiguous regulation; the Act is vague and offers little guidance in distinguishing what is from what is not rational. 42 U.S.C. § 601; Requirements Unrelated to Need, at 1233–34. We interpret Congressional acquiescence in such a broad claim of authority, therefore, as suggesting that any significant state variance from the federal standards is challengeable by HEW. Finally, we note that when Congress in 1961 chose to expand eligibility for AFDC to include families with an unemployed father, it was careful to specify that states did not have to offer benefits to such persons, 42 U.S.C. § 607; it has never indicated that states do not have to offer benefits to families who meet the other federal eligibility standards.

What we have, therefore, by way of statuory background, legislative history, and administrative practice, sheds only opaque light on the precise question of mandatory eligibility of servicemen's families for AFDC. The statute gives some basic options as to the extent of financial participation and as to extending assistance to families with an unemployed father, but otherwise speaks only in terms of federal criteria. Legislative history has carved out a few additional areas for state choice, but administrative and legislative requirements, restricting the states' options, have multiplied since 1935. On the other hand, HEW has approved state plans which provide for families of all servicemen, which provide for none, and which provide only for families of enlistees seeking to avoid the draft and/or draftees. With such a background, both parties appropriately argue that King v. Smith is critical. We share that view. But, for the very reason that both parties claim support from it, the closest analysis is required to derive its basic teaching.

King v. Smith concerned a challenge to Alabama's substitute father regulation denying AFDC benefits to otherwise eligible families whenever the mother "cohabited" in her home or elsewhere with any male. The male was presumed to be a substitute father; hence there was no continually absent parent. Alabama offered two rationales for this rule: the discouraging of illicit sexual relationships and illegitimate births and the economic allocation of its limited AFDC resources by equating families in which there is an informal "marital" relationship with those in which there is an ordinary marital relationship.

The Court began by interpreting the statutory requirement that assistance be furnished as soon as possible to all eligible individuals, 42 U.S.C. § 602(a) (10), and the definition of "dependent child" as a needy, age-qualified child deprived of support by the death, incapacity, or continuing absence of a parent, 42 U.S.C. § 606(a).

"In combination, these two provisions of the Act clearly require participating States to furnish aid to families with children who have a parent absent from the home, if such families are in

other respects eligible." King v. Smith, at 317, 88 S.Ct. at 2133.

This statement, on which plaintiffs heavily rely, is not without ambiguity, for it does not explain whether families are "in other respects eligible" if they are needy under the state standards and have children of the proper age living with the proper relatives, or whether they must also meet additional eligibility requirements imposed by the state.

The Court's treatment of Alabama's first rationale—morality—does not erase the ambiguity. Legislative history clearly indicated to the Court that

> "Congress has determined that immorality and illegitimacy should be dealt with through rehabilitative measures rather than measures that punish dependent children * * *. Alabama may deal with these problems by several different methods under the Social Security Act. But the method it has chosen plainly conflicts with the Act." King v. Smith, at 325–327, 88 S.Ct. at 2137.

This discussion deals only with what both parties here admit, that if a provision of a state plan directly conflicts with clear Congressional intent, that provision must fall. As the legislative history reveals, the Maine regulation under challenge does not directly conflict with any Congressional purpose, unless there is a Congressional purpose that all needy families, who meet federal standards, must be assisted.

On its face, the Court's treatment of Alabama's second rationale—economizing by equating informal and ordinary marital relationships—fails to provide an answer. Once again, the Court seemed to find a conflict between the Alabama rule and Congressional intent. It held that a "substitute father" was not a "parent" within the meaning intended by

Congress. Congress intended " 'parent' * * * to include only those persons with a legal duty of support." King v. Smith, at 327, 88 S.Ct. at 2138.

A close reading, however, reveals that, in rejecting Alabama's second rationale, the Court did not actually find a direct conflict between Congressional intent, as revealed by legislative history, and the challenged state regulation. While the legislative history of Congressional reaction to the use of AFDC eligibility requirements to enforce public morality showed that Congress opposed such a use, the legislative history relied on in disposing of the second justification did not reveal that Congress *opposed* defining "parent" to include "substitute fathers." It revealed only that Congress *used* "parent" to mean those with a legal duty to support; there was no evidence suggesting that states were not free to utilize a definition which by broadening the concept of parent effectively restricted eligibility. Nor did the Court find that the second rationale was an impermissible one for a state to promote; it specifically affirmed the validity of the state interest,[5] while striking down the means for carrying out that interest.

If, then, the end was legitimate, and the means to that end had not been specifically prohibited by Congress, the conflict between the Alabama regulation and Congressional intent must have lain elsewhere. We can only conclude that a conflict existed because the Congressional purpose underlying the statute was to assist all needy children who met the federal standards of eligibility. By imposing a more restrictive standard, Alabama prevented some families, eligible under the federal statute, from receiving benefits. This, the Court determined, violated the broad purpose of the Social Security Act.

---

5. The Court, while refusing to accept Alabama's assumption that children of fathers living at home were in the same position as children of mothers cohabiting with men not their fathers, because of the absence of a legal duty to support in the latter case, nevertheless made clear that to the extent the situations became the same, *i. e.*, to the extent that the substitute father actually furnished support, the state could properly take these into account in determining need. 392 U.S. at 334, 88 S.Ct. 2128.

According to the Court's interpretation, Congress in 1935 saw needy families as dividing into roughly two groups —those with a potential breadwinner and those without. King v. Smith, at 327–330, 88 S.Ct. 2128. The former group was not eligible for AFDC but was to obtain assistance by public work programs. The latter group was eligible because it could not be helped by simply providing employment for breadwinners.[6] The Court concluded that Congress could not have believed that "providing employment for some man who is under no legal duty to support a child would in any way provide meaningful economic security for that child." 392 U.S. at 330, 88 S.Ct. at 2140. It added:

"A contrary view would require us to assume that Congress, at the same time that it intended to provide programs for the economic security and protection of all children, also intended arbitrarily to leave one class of destitute children entirely without meaningful protection." Id.[7]

To draw the parallel with this case, Alabama restricted AFDC recipients by the principle that only those families which did not have any "man in the house" could qualify; Maine restricts its AFDC recipients by the principle that only those families whose fathers have left home either involuntarily or permanently can qualify. In each case the availability of alternative programs for the man in question was irrelevant; in Alabama because the paramour had no duty to support the child; in Maine because the enlisted man was beyond the pale of any such civilian pursuit. The only difference between the two cases is that, in the Alabama situation, providing employment to the man in the house gave no assurance of security to the child, while, in the Maine situation, the question of assurance of security to the child is not even reached since there is no possibility in the first place to provide adequate employment for the man-out-of-the-house.[8] And in both cases a "class of destitute children" has been left "without meaningful protection."

Beyond this parallelism, we distill the following teaching from King v. Smith: absent specific indications of Congressional authorizations for the states to exclude a class of dependent children by narrowing a specific federally-imposed eligibility factor, any state eligibility standards which exclude persons eligible for assistance under the fed-

6. This rationale answers an issue, raised at oral argument, whether the needy financial status of the child must be *caused* by the father's continued absence or whether the continued absence of the father is only a necessary qualifying factor for assistance. If the absence had to cause the need, it could be argued that the children of absent enlisted men were not needy because of their father's absence, but because of the inadequacy of the military's dependency allowance. If the father were living at home, the allowance would still be inadequate, and the children would still be needy. Were such the analysis, AFDC assistance would not be given the family of an unemployed or very lowly paid father when the latter died, became incapacitated or continually absent, for such event would not be a cause of the child's needy status. Such, of course, was not the result for Congress was not concerned with the cause of the need, but with the proper program to apply. If a father was present in the home, he was thought to be capable of obtaining support for his family by other means. The presence or absence of the father was merely a factor in determining whether a family would be supported by work relief or AFDC.

7. This basic purpose-oriented interpretation of the term "parent" as meaning only a person with a legal duty to support a child was buttressed by consistent indications elsewhere in the Act. But that such indications were confirmatory rather than quintessential is made express: "Our interpretation of the term 'parent' in § 406 (a) is strongly supported by the way the term is used in other sections of the Act." 392 U.S. at 330, 88 S.Ct. at 2140.

8. We cannot help but note the irony of a result which would deny assistance to the family of a man who finds that family disqualified from receiving AFDC on the ground that he has removed himself from the possibility of receiving public work relief by voluntarily undertaking, for inadequate compensation, the defense of his country.

eral standards are in conflict with Congressional intent and void under the federal statute.[9]

We hold, therefore, that Maine must provide AFDC benefits to all families, eligible under the federal statute, absent Congressional authorization giving the states an option to exclude a specific category of children who are "dependent" under the federal definition. The state has been unable to point to any specific Congressional authorization for the exclusion of needy families of enlisted men. We therefore find that regardless of the validity of the interests Maine seeks to promote, insofar as it is inconsistent with this opinion, the regulation set forth at Maine Public Assistance Payments Manual, Ch. II, § C, p. 2, is void and may not be enforced.

One final comment is perhaps merited by the state's argument that to hold as we do would "open Pandora's box" by forcing the state to assist other classes of children whose fathers are "continually absent" and, because of the state's limited resources, reducing the amounts available for present AFDC recipients. Of course any such decision as this opens a "box" to some extent; such was the purpose of plaintiffs who felt themselves

in a particularly confining box. While the practical implications of such a ruling as this may be disputed,[10] the only relevant consideration is that, whatever may be the implications, the law requires this result. If a box has been opened, it is in obedience to, and not in defiance of, Zeus' command.

Judgment will be entered for the plaintiffs declaring that the regulation set forth in Maine Public Assistance Payments Manual, Ch. II, § C, p. 2, insofar as it denies AFDC benefits to needy families in which the father is absent because he has enlisted in the armed forces, is void and unenforceable because it conflicts with Sections 402(a) (10) and 406(a) of the Social Security Act, 42 U.S.C. §§ 602(a) (10) and 606(a); enjoining the defendants from further enforcement of said regulation; and ordering the defendants to make payment to the members of the plaintiff class of AFDC payments illegally withheld by reason of said regulation from the date upon which a member applied for AFDC benefits to the date of this Court's final judgment. Plaintiffs may submit a proposed form of judgment, with notice to defendants, within ten days. Defendants may present their comments thereon within five days thereafter.

9. Other courts have also concluded that this is the ruling of King v. Smith. Woods v. Miller, 318 F.Supp. 510 (W.D.Pa.1970) (3-judge court); Cooper v. Laupheimer, 316 F.Supp. 264 (E.D.Pa.1970) (3-judge court); Doe v. Shapiro, 302 F.Supp. 761 (D.Conn.1969) (3-judge court), appeal dismissed, 396 U.S. 488, 90 S.Ct. 641, 24 L.Ed.2d 677 (1970), rehearing denied, 397 U.S. 970, 90 S.Ct. 991, 25 L.Ed.2d 264 (1970); Remillard v. Carleson, 325 F.Supp. 1272 (N.D.Cal., 1971) (3-judge court); Doe v. Hursh, 328 F. Supp. 1360 (D.Minn., 1970); Damico v. State of California, Nos. 46538, 48462 (N.D.Cal., Sept. 12, 1969) (3-judge court).

Defendants have cited two cases in support of their position which we have not commented on because we consider them not to bear on the issue of state power to restrict eligibility for AFDC. Macias v. Finch, 324 F.Supp. 1252 (N.D.Cal., 1970), aff'd sub nom. Macias v. Richardson, 400 U.S. 913, 91 S.Ct. 180, 27 L.Ed. 2d 153 (1970) (upheld a federal regulation defining unemployment); Wyman v.

James, 400 U.S. 309, 91 S.Ct. 381, 27 L.Ed.2d 408 (1971) (upheld a state administrative, as opposed to eligibility, regulation enforced by terminating benefits). We also find that HEW's old regulation found in Handbook of Public Assistance Administration, Part IV, § 3422.2 and the recently promulgated regulation, 45 C.F.R. § 233.90(c) (1) (iii), which replaces it is unhelpful, although cited by both parties, because of the ambiguity of the regulations and because we believe HEW has misinterpreted the federal statute in the light of King v. Smith.

10. For example, defendant's answer to plaintiffs' interrogatories indicated that between January 1, 1970 and September 13, 1970 only 11 applications for AFDC were denied because the father in the family had enlisted. This statistic may very well have been changed by the recent substantial increases in military pay. As to the future, we can only note that a substantial reordering of welfare programs is very much a live issue.