Janet L. CHARLESTON et al., Plaintiffs,

v.

Helene WOHLGEMUTH et al.,
Defendants.

Mary COLEMAN et al., Plaintiffs,

v.

Helene WOHLGEMUTH et al.,
Defendants.

Civ. A. Nos. 70–3479, 71–262.

United States District Court,
E. D. Pennsylvania.

Sept. 10, 1971.

Douglas Dye, Jonathan Stein, Community Legal Services, Philadelphia, Pa., for plaintiffs.

Jacques Fox, Asst. Atty. Gen., Harrisburg, Pa., for defendants.

Before MARIS, Circuit Judge, and HIGGINBOTHAM, and BECKER, District Judges.

## OPINION AND ORDER

EDWARD R. BECKER, District Judge.

### I. *Preliminary Statement*

The regulations of the Pennsylvania Department of Public Welfare ("DPW") require applicants for Aid to Families with Dependent Children ("AFDC") who own certain types of real or personal property to agree, as a condition of receiving assistance, to reimburse the Commonwealth of Pennsylvania for assistance received, and to give the Commonwealth a lien on the property as security. These cases attack the validity of those regulations. Charleston v. Wohlgemuth (70–3479) involves the regulation which requires assistance recipients who own real estate to sign DPW form PA–9 which, by the vehicle of a confession of judgment, gives the Commonwealth a lien against the real estate as security for the reimbursement promise. Coleman v. Wohlgemuth (71–262) concerns the regulation which requires assistance recipients who possess tort and Workmen's Compensation claims, who have the right to receive support payments, social security, unemployment, sick or retirement benefits, or who hold other similar types of personal property, to sign DPW form PA–176K, which contains an assignment of these rights, claims, or property and a confession of judgment as security for the promise to repay.[1]

Pennsylvania participates in the AFDC program established by the So-

---

1. The Regulations requiring execution of the PA–9 form are found in the Department of Welfare Public Assistance Manual ("Pa.Manual") at §§ 3822, 3822.1 and 3822.21; those requiring execution of the PA–176 form at §§ 3822, 3822.1 and 3822.3.

cial Security Act of 1935, 42 U.S.C. § 601 et seq. (Supp. V, 1970), amending 42 U.S.C. § 601 et seq. (1964). Under this program, financed with matching funds and administered by the states, financial assistance is provided for dependent children.

The two cases were brought by plaintiffs, all of whom are eligible for the AFDC program, on behalf of themselves (and their eight family units) and all other AFDC eligible families in Pennsylvania who are subject to the regulations. The actions seek to set the regulations aside on the grounds that they are violative of the due process and equal protection clauses of the Fourteenth Amendment, and are in conflict with the Social Security Act.

■ The matters first came before Judge A. Leon Higginbotham, Jr., who, in each case, requested the convening of a statutory three-judge court because the actions sought to invalidate regulations of statewide applicability on substantial constitutional grounds.[2] The two cases were consolidated and a three-judge court was convened.[3] In the interim, Judge Higginbotham permitted them to proceed as class actions. He also granted a temporary restraining order prohibiting DPW from withholding assistance from plaintiffs or the class they represent in the Charleston case because

of failure to execute PA–9 forms. Counsel then agreed that the temporary restraining order be extended until final decision in the case. The Commonwealth, moreover, agreed not to withhold assistance from Mrs. Coleman or the class she represents because of failure to execute PA–176 forms pending final decision, without the necessity of a temporary restraining order.

■ We have heard the matter on the merits. For the reasons stated in this opinion,[4] we find the constitutional and statutory arguments of the plaintiffs to be without merit.[5] Before setting forth these reasons, we must review the factual record, which consists of a stipulation of facts, the testimony of two witnesses, and a declaration of DPW policy by its counsel which, in a sense, constitutes the most significant fact of record. Aside from the testimony of Mrs. Shirley Dennis (see *infra*), all of the facts are uncontested.

## II. *The Facts*

While there are numerous plaintiffs, it is not necessary to detail the relationship of each of them to the case, for the situations of Mrs. Charleston and Mrs. Coleman, described below, are typical. Suffice it to say that all of the other plaintiffs have either executed PA–9's or PA–176's, or have refused to, and in the

2. States that choose to participate in the AFDC program must submit for approval a "state plan" of administration to the Secretary of Health, Education and Welfare (HEW). The plan must conform with the requirements of the Act specified in 42 U.S.C. § 602 (1964) and with the regulations promulgated by HEW. Since the Pennsylvania Welfare Statute, Pa. Stat., tit. 62, § 401 et seq. (1968) is extremely general and delegates to DPW the formulation of standards as to eligibility for assistance and the nature and extent thereof, the Pennsylvania State Plan consists principally of the Regulations contained in the Pa.Manual. Hence, an attack upon the Regulations (in contrast to an attack upon the statute) supports the convening of a three-judge court.

3. Actually, two three-judge courts were convened, consisting of the same three judges.

4. The opinion constitutes our findings of fact and conclusions of law under Fed. R.Civ.P. 52(a).

5. As will be seen, the statutory claim is a pendent one. We need not, however, decide whether it is "insubstantial" or not, for the three-judge court, in determining the constitutional claim, has authority to determine the pendent claim regardless of substantiality or exhaustion of remedies. *See* Rosado v. Wyman, 397 U.S. 397, 90 S.Ct. 1207, 25 L.Ed. 2d 442 (1970); King v. Smith, 392 U.S. 309, 88 S.Ct. 2128, 20 L.Ed.2d 1118 (1968); United Mine Workers v. Gibbs, 383 U.S. 715, 86 S.Ct. 1130, 16 L.Ed.2d 218 (1966); Williford v. Laupheimer, 311 F.Supp. 720 (E.D.Pa.1969).

latter case, their right to receive assistance pending the outcome of this litigation has been secured by the temporary restraining order.[6] Standing to sue is adequately established.

 Mrs. Charleston earns $118 semi-monthly in part time employment and receives $151 semi-monthly AFDC assistance for her six minor children. She has purchased a home under the Federal Housing Authority's § 235 plan, pursuant to which the federal government subsidizes part of the mortgage interest.[7] Because of her home ownership, she was requested to sign the PA–9 form.

Mrs. Coleman is the mother of seven minor children. Her income consists of a $10 bi-weekly support order payment and $218.30 semi-monthly AFDC benefits. When she was injured in a motor vehicle accident, she was requested to sign the PA–176 form assigning her personal injury claim.

Both Mrs. Charleston and Mrs. Coleman refused to sign the DPW forms and these suits followed.

The stated purpose of the regulations under attack is to facilitate protection and collection of the Commonwealth's claim to reimbursement of assistance granted during the time property is owned, or a time when a claim or right to property arises. The statutory origin of the Commonwealth's claim is the Pennsylvania Support Law, Pa.Stat., tit. 62, § 1974 (1968).[8] The regulations, however, articulate the "two closely related reasons for reimbursement":

"The one rests on the basic principle that public assistance supplements resources and that whenever assistance is granted in lieu of the utilization of certain resources, the assistance should be repaid whenever these resources become available. The second reason relates to the financing of the program since reimbursement results in a recovery of money that is then available for redistribution as assistance, thereby reducing to this extent the need for additional tax revenues." Pa. DPW Manual § 3820.

The PA–9 and PA–176 forms are basically similar, and they repeat much of the language of the regulations. One executing a PA–9 acknowledges that his real and personal property is liable for the repayment of assistance granted to himself, spouse and unemancipated minor children. The form recites that the liability does not apply to assistance received before acquisition of the property

---

6. The rescission by DPW of the requirement that certain of the plaintiffs (including Mrs. Charleston) execute PA–9's because of the fact that the realty in question was held by them as trustee for their children, instead of individually, is insufficient to moot the case because of: (1) the presence of other plaintiffs who were still required to sign the form, and (2) the principle that questions of public importance, "capable of repetition, yet evading review," are not readily mooted. Moore v. Ogilvie, 394 U.S. 814, 816, 89 S.Ct. 1493, 1494, 23 L.Ed.2d 1 (1969) ; Southern Pacific Terminal Co. v. ICC, 219 U.S. 498, 515, 31 S.Ct. 279, 55 L.Ed. 310 (1911).

7. *See* 12 U.S.C. § 1715z–2 (1970).

8. "§ 1974. Property of persons liable for expenses incurred for support and assistance.
 (a) Except as limited by subsection (c) hereof, the real and personal property of any person shall be liable for the expenses of his support, maintenance, assistance and burial, and for the expenses of the support, maintenance, assistance and burial of the spouse and unemancipated minor children of such property owner, incurred by any public body or public agency, if such property was owned during the time such expenses were incurred, or if a right or cause of action existed during the time such expenses were incurred from which the ownership of such property resulted. Any public body or public agency may sue that owner of such property for moneys so expended, and any judgment obtained shall be a lien upon the said real estate of such person and be collected as other judgments, except as to the real and personal property comprising the home and furnishings of such person, which home shall be subject to the lien of such judgment but shall not be subject to execution on such judgment during the lifetime of the person, surviving spouse, or dependent children."

and that the purpose of the agreement is to give DPW a lien on any real property owned while assistance was received. The form includes an authorization to the prothonotary, or any attorney of any court of record in Pennsylvania or elsewhere to appear and enter judgment against the signer for $2,000. The form provides, however, that the judgment shall not be subject to execution during the lifetime of the signer, his spouse or dependent children.

The PA–176 form also contains the confession of judgment in the sum of $2,000 and the agreement to repay assistance. It is directed to the following types of personal property owned by welfare recipients:

Alimony Payments

Delayed Wages

Estates of Deceased Recipients

Goods, Chattels, Autos and Antiques

Income Tax Refunds

Life Insurance

OASI & Railroad Retirement Benefits

Personal Damage Claims and Awards

Personal Property Damages

Railroad Unemployment Benefits

Retirement Funds Which May Be Withdrawn In One Payment

State Employees Retirement System Benefits

Other Retirement Benefits and Pensions

Sick Benefits

Soldiers' Allotments

Support Order Payments

UMWA Welfare Fund Benefits

Vocational Training Payments

Workmen's Compensation (§ 3821.2)

It includes an assignment, which is served upon the recipient's attorney or the agency paying the benefits, directing payment of the proceeds of the claim or of the benefits to DPW.

Both PA–9 and PA–176 provide that, regardless of the amount of the lien, DPW may recover only to the extent of assistance actually advanced. There is no limitation on accumulation of liens so long as the recipient has received more than $2,000 in assistance.

In dollar terms, the Commonwealth collects over $3,000,000 per year pursuant to PA–9 and PA–176 authorizations. The face value of all PA–9 and PA–176 liens at the present time is between 80 and 100 million dollars.

The ownership of real and personal property by a welfare recipient does not bar receipt of assistance, provided the property owned is not disparate to circumstances of a person receiving AFDC aid, the property is not immediately convertible to cash, and PA–9 or PA–176 forms are executed. This principle is inapplicable however to personal property which is immediately convertible to cash. Such personal property is considered available to meet current living expenses (§ 3826) and will bar an individual from eligibility for assistance.

The special problems of real estate ownership have prompted special regulations (§ 3826). *Inter alia,* the Department will transfer its lien to a new property so as to permit a recipient to sell his property and move elsewhere and will subordinate its lien to enable the recipient to make major repairs or to refinance certain debts. The Department retains broad discretion, and, concomitantly, broad powers in this area.

As we have said, the foregoing facts are uncontested. The net result of them, in plaintiffs' view, is less than sanguine. Plaintiffs' witness, Shirley Dennis, director of the Housing Information Center of the Urban League of Philadelphia, testified that the existence of the welfare lien works to the detriment of many welfare recipients who are homeowners, and works against, rather than promotes, self-sufficiency for the following reasons: (1) where homeowners are forced to sell because of urban renewal and there is a DPW lien on the property, ofttimes the recipient cannot obtain a mortgage to buy another home, which results in the Department satisfying the

lien out of the proceeds of the sale; (2) where there is a voluntary decision to sell or relocate, the recipient cannot sell and buy without the Department's permission and the recipient may have to repay part or all of the lien; and (3) often, when the homeowner decides to undertake major home repairs, he cannot obtain financing because the presence of the welfare lien on the credit report discourages financial institutions from extending credit.

Thus, in plaintiffs' view, even the flexibility with respect to PA–9's which is built into the regulations by the lien subordination provisions is insufficient to blunt the adverse effect of the lien on the mobility, self-sufficiency and even the living standards of welfare recipients. In view of our disposition of the matter, Mrs. Dennis' testimony cannot be determinative. However, it was impressive, and we have mentioned it insofar as it might impel the Commonwealth to embark upon a program of remedial action in cooperation with the various lending institutions, supplemented by a program to better inform recipients how they may take advantage of the regulations which permit subordination of lien.

The reimbursement structure recognizes that a dispute may arise as to the actual amount of assistance which has been advanced, and that certain defenses may arise as to the Commonwealth's claim and lien. The regulations create a special Claim Settlement Division to deal with these matters. Moreover, the regulations establish a Fair Hearing Procedure which provides an applicant or recipient the right to a hearing at any time on virtually any matter affecting his relations with DPW, including a dispute as to the actual amount of the assistance claim (§§ 3590–92).[9]

The crucial consideration on this record is, however, the question of the nature of the Commonwealth's lien. This becomes central in the context of plaintiffs' due process argument (see *infra*), at the heart of which is the contention that, by being required to execute the PA–9 or 176 form, the recipient has been forced to relinquish constitutional rights of notice and hearing, and that, in order to avoid being deprived of property pursuant to the judgment lien, he is required to institute onerous litigation in the nature of proceedings to open judgment, which cannot constitutionally be required of the financially deprived. The declaration of policy to which we previously referred, made by counsel for DPW, is that DPW considers the lien obtained via the PA–9 and PA–176 forms to be a dormant security lien under which, and in all events, the Commonwealth carries the burden of establishing the actual amount of assistance paid by it to the recipient, and of overcoming any defense interposed by the recipient at any time that it seeks to enforce the lien. This includes the time of settlement negotiations, the time of a departmental "fair hearing" requested by the recipient, and the event of proceedings brought in state court by the recipient to open judgment.

We will defer consideration of the due process argument until after we have dealt with plaintiffs' statutory and equal protection claims.

## II. *The Statutory Argument*

Under the AFDC program, Pennsylvania is supplied with financial assistance for dependent children by HEW. A "dependent child" is defined by the Social Security Act as an age-qualified, "needy child * * * who has been deprived of parental support or care by reason of the death, continued absence from the home, or physical or mental incapacity of a parent," and who is living in a relative's home. 42 U.S.C. § 606(a) (1964). Furthermore, the Act provides "that aid to families with dependent

---

9. In order to obtain a hearing, an appeal must be filed within 60 days of the action complained of. Prior to the hearing, the aggrieved person is entitled to examine DPW's case file and to be furnished with the names of DPW's witnesses. At the hearing, the aggrieved party may be represented by counsel, present evidence and cross-examine.

children shall be furnished with reasonable promptness to all eligible individuals." 42 U.S.C. § 602(a) (10) (1964).

Under the Pennsylvania regulations, public assistance is denied to welfare applicants or recipients who refuse to sign PA–9 or PA–176 forms when the circumstances requiring them to do so arise. The duty to execute the forms rests with the adults; the denial of benefits extends to the entire family unit. Plaintiffs' statutory argument is essentially that the requirement that a PA–9 or PA–176 form be signed in order that assistance be paid or continued constitutes the imposition of an additional criterion for AFDC eligibility beyond need and dependency, and that such a requirement is in conflict with the Social Security Act.

Plaintiffs' statutory argument is spun from the holding in King v. Smith, 392 U.S. 309 (1968), aff'g 277 F.Supp. 31 (M.D.Ala.1967), which struck down, on the ground of conflict with the Social Security Act, Alabama's "substitute father" regulations which denied AFDC aid to children whose mother cohabited with a man not her husband, as penalizing the children for conduct of their parents over which the children had no control and which was in no way related to meeting the needs of the children. In addition to King v. Smith, plaintiffs rely on two other cases. The first is Cooper v. Laupheimer, 316 F.Supp. 264 (E.D.Pa. 1970), where this Court invalidated a Pennsylvania regulation which reduced current AFDC benefits to children whose mother received a double payment by fraud or mistake in the past. Pointing to the fact that it was the intent of Congress that need and dependency be the only two conditions restricting receipt of AFDC grants, the court in *Cooper* held that the regulation conflicted with the Social Security Act. The second case is Stoddard v. Fisher, 330 F.Supp. 566 (D. Me., 1971), where a three-judge court, on the same statutory grounds, invalidated a Maine regulation which authorized employees of the State Department of Health and Welfare to extend AFDC benefits to needy families in which the father was absent because he had been drafted into military service, but not to families in which the father was absent because he had enlisted into the military.

As we will see, *King, Cooper* and *Stoddard* cannot prevail here. Exposition of the reason they cannot requires an exegesis of Snell v. Wyman, 393 U.S. 323, 89 S.Ct. 553, 21 L.Ed.2d 511 (1969), aff'g 281 F.Supp. 853 (S.D.N.Y.1968), which is the controlling precedent in this case.

*Snell* was an action by welfare recipients challenging New York's Social Services Law, McKinney's Consol.Laws, c. 55 and regulations, which are very similar in nature to Pennsylvania's. Section 104 of the New York law sets forth the general principle that the welfare department may proceed against any person discovered to have real or personal property if the person received or was liable for the support of anyone receiving assistance. Receipt of assistance is deemed by the Act to create an implied contract to repay. Just as in Pennsylvania, the ownership of real or personal property does not preclude the granting of aid. The New York Act further provides:

"The public welfare official may, however, require, as a condition to the granting of aid or the continuance thereof, *that he be given a deed of.or a mortgage on such property in accordance with the provisions of section one hundred six.*

2. However, while the property covered by the deed or mortgage is occupied, in whole or in part, by the responsible relative who gave such deed or mortgage to the public welfare official or, during his minority, by a child or minor for whose benefit the aid was granted the public welfare official shall not sell the property or assign or enforce the mortgage without the written consent of the department * * *." (emphasis added).

The New York Act specifically provides that the welfare department has a lien on personal injury claims to the extent of all aid furnished after the date

that the injury was sustained.[10] It also requires assignment of interests in life insurance policies.

While in Pennsylvania, DPW obtains its lien by its requirement that the welfare recipient sign the PA–9 or PA–176 form (which in turn is placed upon record in the office of the Prothonotary), in New York the lien is obtained statutorily—it arises automatically from the granting of assistance. As we have just seen, in the case of real estate, the New York procedure is more stringent than in Pennsylvania—in requiring a mortgage or deed.

The three-judge court in *Snell* held the New York statute and regulations valid against the claims that they violated the due process, equal protection and supremacy clauses of the constitution, the latter by reason of conflict with the Social Security Act. 281 F.Supp. 853 (S.D.N.Y.1968) (Circuit Judge Kaufmann dissenting).

The due process attack in *Snell* was essentially a substantive due process attack which asserted the repayment provisions to be arbitrary, oppressive and irrational, vague and overbroad. The equal protection argument stemmed from allegedly discriminatory patterns within the statute, not involving the discrimination alleged here. The supremacy or statutory argument was, however, essentially *similar* to that raised here. In disposing of that argument, Judge Frankel pointed to the fact that the federal statutes make reference to and "accommodate hospitably" state repayment obligation programs, indicating the acquiescence of Congress in state arrangements "which are so common that they must be

deemed to be known at least to the responsible and interested Committees of the Congress". 281 F.Supp. at 868. The Supreme Court affirmed without opinion. 393 U.S. 323, 89 S.Ct. 553, 21 L.Ed. 2d 511 (1969).

The immediate significance of *Snell* in the context of this case is plain. Construing a basically similar state plan, the *Snell* court upheld the validity of the reimbursement and lien provisions, and rejected the contention that the provisions were in conflict with the Social Security Act. In the absence of meaningful distinguishing factors, *Snell* has a controlling impact.

Sensing the impact of *Snell* upon their case, plaintiffs contend that it is "largely distinguishable * * * and to the extent that it is not, is incorrect". Supplemental Brief for Plaintiffs at 4. If *Snell* is incorrect, and we do not believe it is, there is plainly nothing that this Court can do about it, since, by virtue of affirmance, *Snell* now represents the teaching of the Supreme Court. Neither do we think it to be distinguishable.

In its simplest form, plaintiffs' statutory argument is that the regulations must fall because the requirement of execution of PA–9 or PA–176 imposes an additional "condition of eligibility", beyond that of need and dependency. However, by reference to HEW regulations which require that *only* income and resources actually available for current use on a regular basis be considered in determining need,[11] the formulation of the claim becomes more sophisticated. It is to the effect that: (1) ownership of real property or a tort claim does not meet the HEW requirement; (2) the

10. "8] § 104–a. Liens for public assistance and care on claims and suits for personal injuries.

 1. If a recipient of public assistance and care shall have a right of action, suit, claim, counterclaim or demand against another on account of any personal injuries suffered by such recipient, then the public welfare official for the public welfare district providing such assistance and care shall have a lien for such amount as may be fixed by the public welfare of-

ficial not exceeding, however, the total amount of such assistance and care furnished by such public welfare official on and after the date when such injuries were incurred."

11. Handbook of Public Assistance Administration Part IV, Eligibility Assistance, Services § 3120—Availability of Income and Resources. The Pennsylvania regulations are in conformity.

Department itself does not view real estate or a speculative personal injury claim which may never be realized as available to meet current needs for food, clothing and shelter; (3) it is a "sham" to pretend that assistance is granted only in lieu of their utilization; and (4) taking the real estate or tort claim into consideration by denying assistance because of failure to execute a PA–9 or 176 therefore creates a conflict with the Social Security Act.

The problem with these arguments is that: (1) these HEW regulations being no less applicable in New York than in Pennsylvania; and (2) the New York and Pennsylvania procedures being extremely similar, the rejection of the statutory argument in *Snell* means that it must be rejected here. The fact that the vehicle for obtaining the security interest in Pennsylvania is a confession of judgment, while in New York it is a statutory lien, does not distinguish the two procedures. And, just as Judge Frankel pointed to the Department of Health, Education and Welfare's approval of the New York State Plan with its reimbursement features, we note that the Pennsylvania Plan with its reimbursement features has also been approved for many years (25) by HEW. Perhaps the most significant point of comparison is that the refusal of aid for failure to give a deed or mortgage, approved in *Snell*, is no less a "condition of eligibility" than refusal of aid for failure to sign a PA–9 or PA–176 here.

The interposition of *Snell* makes King v. Smith, Cooper v. Laupheimer, and Stoddard v. Fisher, *supra*, relied upon by plaintiffs, inapposite. Mr. Chief Justice Warren, speaking for the King v. Smith court, stressed the fact that Alabama's interest in dealing with conduct it regards as immoral *was not* a legitimate justification for AFDC disqualification. However, in *Snell*, the Supreme Court held that failure to accede to the state's claim for lien and reimbursement *was* a legitimate justification for AFDC disqualification. Neither *Cooper* nor *Stoddard* affect this conclusion. In fact, they support a conclusion which undermines plaintiffs' statutory argument: that disqualification for failure to execute PA–9 or PA–176 forms does not really constitute the imposition of an additional "condition of eligibility" at all, as that term has been used in the cases.[12]

■ On the authority of Snell v. Wyman, then, we hold that the Pennsylvania regulations are not in conflict with the Social Security Act.

### III. *The Equal Protection Argument*

■ Plaintiffs' equal protection claim is to the effect that the regulations create two classes of needy and dependent children, otherwise eligible for assistance: those who receive assistance because their parents are willing to execute the PA–9 or PA–176 forms, and those who are denied assistance because their parents will not, and that this constitutes a violation of the equal protection clause. In support of this argument, plaintiffs rely upon the lower court opinion in King v. Smith, *supra*, which invalidated the Alabama regulations on equal protection, as well as statutory, grounds.[13]

The equal protection questions raised in Snell v. Wyman, *supra*, were different

12. A review of the cases discussed in Comment, AFDC Eligibility Requirements Unrelated to Need: The Impact of King v. Smith, 118 U.Pa.L.Rev. 1219, 1231–32 (1970), called to our attention by plaintiffs, support this conclusion. And *see* Wyman v. James, 400 U.S. 309, 91 S.Ct. 381, 27 L.Ed.2d 408 (1971), *infra*, where the court upheld, against a Fourth Amendment challenge, the validity of a state regulation requiring admission of a caseworker to the home as a condition of eligibility for AFDC assistance.

13. Although Mr. Justice Douglas, concurring, would have affirmed the lower court on equal protection, as well as statutory, grounds, Mr. Justice Warren, speaking for the Court, disposed of the matter on statutory grounds and neither reached nor intimated any views upon the equal protection question.

from those raised here. However *Snell* nonetheless forms the basis for disposition of the equal protection argument raised in this case. The *Snell* court, in disposing of the substantive due process question before it, decreed the New York lien and reimbursement structure to be a rational instrument of state policy. A fortiori, the basically similar Pennsylvania regulations are likewise a rational instrument of state policy.[14]

The equal protection case in the public welfare field most apposite here is Dandridge v. Williams, 397 U.S. 471, 90 S.Ct. 1153, 25 L.Ed.2d 491 (1970), which holds that:

"In the area of economics and social welfare, a State does not violate the Equal Protection Clause merely because the classifications made by its laws are imperfect. If the classification has some 'reasonable basis,' it does not offend the Constitution simply because the classification 'is not made with mathematical nicety or because in practice it results in some inequality.' Lindsley v. Natural Carbonic Gas Co., 220 U.S. 61, 78, 31 S.Ct. 337, 340, 55 L.Ed. 369. 'The problems of government are practical ones and may justify, if they do not require, rough accommodations—illogical, it may be, and unscientific.' Metropolis Theatre Co. v. City of Chicago, 228 U.S. 61, 69–70, 33 S.Ct. 441, 443, 57 L.Ed. 730. '*A statutory discrimination will not be set aside if any state of facts reasonably*

*may be conceived to justify it.'* McGowan v. Maryland, 366 U.S. 420, 426, 81 S.Ct. 1101, 1105, 6 L.Ed.2d 393." (emphasis added).

Interestingly, immediately following this portion of its opinion, the *Dandridge* court went on to cite Snell v. Wyman as authority for applying this standard. We have already pointed to the fact that New York denies aid to persons who refuse to execute a deed or mortgage to their real estate; the deed cannot be executed by the child, so that the refusal of aid to the parent means deprivation to the child. And yet, in announcing *Dandridge,* the Supreme Court cited *Snell,* which upheld the practice attacked as obnoxious here. Perhaps, in suggesting that *Dandridge* directly disposes of the question before us, we read too much into the citation by the *Dandridge* court of *Snell.* But, if there are, in fact, two classes of needy and dependent children created by the Pennsylvania regulations, one which receives assistance because their parents are willing to execute PA–9 or 176 forms, and one which is denied assistance because their parents will not, the holding in *Dandridge* still compels a rejection of plaintiffs' equal protection claim, for such classification does have a rational basis. To hold otherwise would require a rejection of *Snell,* which is the law.[15]

This result, if not dictated by *Dandridge, is* compelled by the decision of the Supreme Court in Wyman v. James,

14. In paragraph 24 of defendants' answer, in the *Charleston* case, the "reasonable basis" for the eligibility requirement is set forth as follows:
"(1) 'Financing of the assistance program' (the Commonwealth's current revenues from (PA 9) real estate liens now averages approximately four million dollars annually) (2) The savings of tax money and encouraging self-sufficiency i. e. 'requiring reimbursement' encourages persons to find ways of remaining independent of public assistance (3) The protection and collection of the Commonwealth claim for reimbursement mandated by the Support Law (62 P.S. 1974) and the Pennsylvania Supreme Court (Watts [Waits'] Estate (336 Pa. 151,

[7 A.2d 329])), (4) Equal treatment of all property owners."

15. There have been legislative efforts to alter the reimbursement policy, but none have yet succeeded. Bills presently in Pennsylvania House and Senate Committees provide, *inter alia,* that:
"no lien shall be imposed against the property of persons receiving assistance."
There are many arguments favoring such a policy. Our holding goes, of course, not to the question of which policy is preferable, or whether the present policy is wise or unwise, but only as to whether the present policy is constitutional and consistent with the Social Security law.

400 U.S. 309, 91 S.Ct. 381, 27 L.Ed.2d 408 (1971). In *Wyman,* the Court upheld the validity of a state regulation requiring admission of a caseworker to the home as a condition of eligibility for AFDC assistance; yet, in Wyman, no less than here, the action of a parent in refusing to accede to a condition of eligibility for AFDC aid worked a deprivation upon the children. *Dandridge* and *Wyman* then, render plaintiffs' equal protection claim without merit, because they make it clear that the children cannot qualify as a separate class, unconstitutionally discriminated against in violation of the equal protection clause.

## IV. *The Due Process Argument*

As we have seen, the PA-9 and PA-176 forms contain confession of judgment clauses. Under the confession of judgment procedure, which has existed in Pennsylvania for a century and a half,[16] the debtor signs an agreement containing a clause which authorizes the Prothonotary, court clerk or any attorney to appear in any court, at any time, and, generally regardless of default, to confess judgment against the debtor for any unpaid portion of the debt together with interest and costs and attorneys fees. Judgment is entered without notice or hearing. The debtor may move to strike or open the judgment in subsequent legal proceedings; however this requires, for all practical purposes, the retention of counsel who must file a motion, take depositions, file a brief and ar-

gue the motion. If successful, the judgment is either stricken (if there is a defect on the face of the record), or—and this is the more common case—the judgment is opened and the debtor let in to a defense.[17]

In Swarb v. Lennox, 314 F.Supp. 1091 (E.D.Pa.1970), probable jurisdiction noted, 401 U.S. 991, 91 S.Ct. 1220, 28 L.Ed.2d 529 (1971), a three-judge court of this district, following the lead of Sniadach v. Family Finance Corp., 395 U.S. 337, 89 S.Ct. 1820, 23 L.Ed.2d 349 (1969), and Goldberg v. Kelly, 397 U.S. 254, 90 S.Ct. 1011, 25 L.Ed.2d 287 (1970), held that the confession of judgment procedure, as applied to leases and consumer financing documents, offended the Fourteenth Amendment due process clause as to persons earning less than $10,000 per year,[18] because it resulted in a significant deprivation of property without notice or opportunity to be heard on the underlying claim.

In view of the holding in Snell v. Wyman, plaintiffs do not argue that it is unconstitutional for the Commonwealth to seek or obtain reimbursement from a welfare recipient. They limit their argument to the contention, based upon *Swarb,* that requiring a recipient to execute a PA-9 or 176 in order to receive assistance, which, in turn, leads to the entering of a judgment against the recipient without any hearing on the underlying claim, constitutes a violation of the due process clause of the Fourteenth Amendment because the recipient has

16. The procedure was originally authorized by the Act of February 24, 1806, Pub. L.No.334, 4 Sm.L. 270 § 28, as amended, Pa.Stat., tit. 12, § 739 (1953).

17. Effective January 1, 1970, the Pennsylvania Supreme Court adopted new Rules pertaining to confession of judgment for money. The rules prohibit execution under confessed judgments without prior notice to the debtor, but they do not change the basic nature of the procedure involved in entering the judgment, which, in Pennsylvania, creates an automatic lien upon realty, and gives rise to the right of execution upon personalty. Neither do the new rules change the req-

uisites for opening confessed judgments. Pa.R.Civ.P. 2950-62, 12 P.S.Appendix.

18. The Court found that 95% of those who had signed instruments confessing judgment against themselves in Philadelphia over a given period lacked understanding of what they were signing and that 96% of the judgments were confessed against individuals earning less than $10,000 per year. Pending determination by the Supreme Court, which will hear oral argument on the case, Mr. Justice Brennan has broadened the *Swarb* order to include all confessed judgments against individuals regardless of income in "consumer transactions as defined by the Court below."

been significantly deprived of property by the entering of the judgment without notice or opportunity to be heard.[19]

Plaintiffs' argument overlooks one significant aspect of the findings which buttress the *Swarb* decision. It is that, in proceedings to open judgment:

> "*The most striking feature* * * * *is that the burden of proof is placed upon the debtor* who is considered the proponent of a claim and who must convince the court of the need for equitable relief. See Ahrens v. Goldstein, 376 Pa. 114, 102 A.2d 164 (1954); Lukac v. Morris, 108 Pa.Super. 453, 164 A. 834 (1933). The placing of this burden upon the debtor is in direct contrast to the burdens in a normal or pre-judgment creditor-debtor action. In those cases instituted by a creditor against a debtor, the creditor is considered the proponent of a claim and the burdens are his." 314 F.Supp. at 1094–1095 (emphasis added).

The welfare recipient debtor who has had judgment confessed against him is in a very different posture from the debtor who has had judgment confessed against him in a consumer financing transaction and, prior to *Swarb*, was faced with the problems just described in getting the judgment opened.[20] For, as we have found, the policy of DPW is that the lien obtained under the PA–9 and 176 forms is a dormant security lien under which, and in all events, the Commonwealth carries the burden of establishing the actual amount of assistance paid by it to the recipient, and of overcoming any defense interposed by the recipient at any time that it seeks to enforce the lien. This includes the time of settlement negotiations, the time of a departmental "fair hearing" requested by the recipient, and the event of proceedings to open judgment brought in state court by the recipient.

In short, the factors which led the *Swarb* court to invalidate the confession of judgment procedure do not exist here. When judgment is confessed pursuant to PA–9 or PA–176, the Commonwealth has no more or less than New York's welfare department has—a dormant lien, the retention of which necessitates the proving of its claim—and DPW has less than the deed or mortgage which New York obtains.

Plaintiffs direct us to Sherbert v. Verner, 374 U.S. 398, 83 S.Ct. 1790, 10 L. Ed.2d 965 (1963) where the Supreme Court reversed a denial of unemployment compensation benefits to a Seventh Day Adventist who refused, on religious grounds, to accept employment on Saturdays, holding that conditioning such benefits on availability for Saturday employment restricted the plaintiff's free exercise of religion. They argue, concomitantly, that the Commonwealth's conditioning of welfare benefits on executing a document which confesses judgment without notice or hearing works a denial of Fourteenth Amendment rights to due process of law. But the argument fails when one seeks to identify what significant property rights are relinquished.

---

19. Plaintiffs also cite Boddie v. Connecticut, 401 U.S. 371, 91 S.Ct. 780, 28 L.Ed. 2d 113 (1971), where state procedures requiring the payment of court fees and costs in divorce actions were found to have effectively barred access to the courts to indigents and held to violate Fourteenth Amendment due process. In effect, plaintiffs rely upon *Boddie* to demonstrate that *Swarb* was correct in holding that a hearing must be held before one can be deprived of any significant property interest.

20. The *Swarb* decree enjoined the prothonotary from entering judgment by confession against members of the class on leases and consumer financing documents, unless an intentional waiver of rights was shown. The Prothonotary of Philadelphia County, Americo V. Cortese, at first refused to accept PA–9 and PA–176 confessions. However, after receiving opinions from the City Solicitor of Philadelphia and the Attorney General of Pennsylvania that PA–9 and 176 transactions were not consumer transactions within the meaning of *Swarb*, he commenced accepting them, and has continued to do so.

 

In view of DPW's policy requiring it to prove its claim, the answer is "none".

The Supreme Court dealt with an analogous situation in Wyman v. James, *supra*, where it had been contended that the State regulation requiring the admission of a caseworker to the AFDC recipient's home as a condition of eligibility violated the Fourth Amendment and was in conflict with the Social Security Act because it was coercing a surrender of the parents' constitutional right of privacy. The Supreme Court rejected this contention by stating that:

> "Mrs. James has the 'right' to refuse the home visit, but a consequence in the form of cessation of aid * * * flows from that refusal. The choice is entirely hers, and nothing of constitutional magnitude is involved." *Id.*, 400 U.S. at 324, 91 S.Ct. at 389.

Plaintiffs concede that were Pennsylvania to provide for a statutory lien like New York, or were DPW simply to institute suit against the recipient on a periodic basis for the past due amount of the claim—notwithstanding the greater embarrassment or inconvenience to the recipient[21]—due process would not be offended. But they wish us to hold that, because Pennsylvania has elected a different mode of obtaining reimbursement, notwithstanding that its net effect is virtually the same as New York's, the Pennsylvania procedure must be struck down. The argument falls on its own weight.

■ When the Pennsylvania regulations are viewed in light of DPW's policy under which the Commonwealth has only a dormant lien and always carries the burden of proof, the Pennsylvania and New York procedures conform. This means that *Snell* is also dispositive of plaintiffs' due process claim. We hold that plaintiffs are not deprived of any significant property interest without notice or hearing by being required to execute the PA–9 or PA–176 forms as a condition of receiving assistance. We note, however, that should the policy declared by the Commonwealth as to the burden of proof in all proceedings in which the Commonwealth attempts to enforce its lien or in which the amount of the Commonwealth's claim is being determined be revised, the due process aspect of our opinion may no longer be binding.

## V. *Conclusion*

We have determined that the Pennsylvania Welfare Regulations which require the execution of PA–9 and PA–176K forms as a condition of receiving AFDC assistance do not violate the equal protection or due process clauses of the Fourteenth Amendment and are not in conflict with the Social Security Act. Accordingly, the temporary restraining order heretofore entered in the Charleston case will be dissolved, and judgment will be entered for the defendants in each case.

---

21. Regulation 3822 provides:

"To avoid the publicity and additional costs imposed on a former recipient or his estate by court action and to assure equal treatment, persons who are liable for reimbursement are required to acknowledge in writing at the time of application their liability for reimbursement * * *."