Cecile **BOISVERT**, by her father and next friend Wilfred A. Boisvert, Plaintiff,

v.

Gerard **ZEILLER** et al., Defendants.

Civ. A. No. 3348.

United States District Court, D. New Hampshire.

Nov. 12, 1971.

New Hampshire Legal Assistance by Daniel W. O'Shaughnessy, Manchester, N. H., for plaintiff.

Office of the Atty. Gen., State of N. H., by John T. Pappas, Concord, N. H., for defendants.

Before COFFIN, Circuit Judge, and GIGNOUX and BOWNES, District Judges.

## OPINION

COFFIN, Circuit Judge.

Plaintiff sues by her father and next friend under 42 U.S.C. § 1983, the Fourteenth Amendment and the Social Security Act to have certain regulations of the State of New Hampshire, Department of Health and Welfare, declared invalid and their enforcement enjoined. Since a declaratory judgment and an injunction are sought, 28 U.S.C. §§ 2201 and 2202, and other necessary conditions are met, a three-judge court has been convened pursuant to 28 U.S.C. §§ 2281, 2282 and 2284. Jurisdiction is invoked pursuant to 28 U.S.C. § 1343(3) and (4). All relevant facts have been stipulated.

Plaintiff is a thirty-nine year old woman who has suffered from a severe form of mental retardation since infancy. Since her mental capacity is that of only a seven year old child, she has never been able to engage in any sort of gainful occupation. During the past year, plaintiff was admitted to the Sacred Heart Hospital in Manchester, New Hampshire and had all of her teeth extracted. Part of her resulting dental and hospitalization expenses were covered by insurance. The balance, amounting to approximately $342.00, was billed to and was subsequently paid by plain-

tiff's parents, who live in modest, though not impoverished, circumstances.

On September 25, 1970, plaintiff's father applied to the New Hampshire Division of Welfare on behalf of plaintiff for medical assistance for the expenses incurred by her for dental work in excess of that covered by insurance. Because plaintiff did not fit within the Division's conditions of eligibility for medical assistance—which limit aid to those persons who suffer from a disabling *physical* impairment—the application was denied.

Plaintiff challenges this action on the part of the New Hampshire Division of Welfare on two grounds: first, she contends that New Hampshire's Welfare Regulations 7555 and 7560.1, specifying conditions of eligibility for the New Hampshire Medical Assistance (Medicaid) Program, are invalid because inconsistent with certain provisions of the Social Security Act and, second, she argues that said regulations unconstitutionally deny her both due process and equal protection of the laws. The defendants are officials employed by the New Hampshire Department of Welfare.[1]

### I.

The defendants have urged that plaintiff's complaint presents an apt case for abstention, citing the line of cases beginning with Railroad Comm'n v. Pullman Co., 312 U.S. 496, 61 S.Ct. 643, 85 L.Ed. 971 (1941). We have seriously considered this issue. Were the New Hampshire statute phrased solely in terms of making medical assistance available to those who are "permanently and totally" disabled, recourse to the state courts for interpretation might well be indicated. A federal constitutional issue might be avoided thereby and state policy declared by the courts best equipped to interpret that policy. But further analysis of the New Hampshire statutory scheme reveals that abstention here would be based solely on the expediency of asking another court to do our work.

In prescribing conditions of eligibility for New Hampshire's Medical Assistance Program, the director and the commissioner of the New Hampshire Division of Welfare are guided by New Hampshire Revised Statutes Annotated [hereinafter referred to as "RSA"] Chapters 167:6, 161:2 and 167:5.[2] RSA Chapter 167:6 provides in relevant part that medical assistance shall be made available to anyone "who is a recipient of categorical assistance or a medically needy person as defined by the director of welfare * * *."[3] To receive categorical assistance, an applicant must be both "permanently and totally disabled" and must meet certain need criteria set by the director and the commissioner. Neither "permanently and totally disa-

---

1. Plaintiff has waived all of her claims against the State of New Hampshire as well as her claim for damages against the individual defendants in both their personal and representative capacities. Defendants have agreed in their representative capacities to reimburse plaintiff for the amount spent by her for dental work ($342.00) in the event this court determines that such benefits have been illegally withheld.

2. To qualify for the matching federal grants for medical assistance which are available to the states under Title XIX of the Social Security Act of 1935, 42 U.S.C. §§ 1396–1396g, each state legislature is required to enact an enabling statute, a so-called "state plan", which meets certain federal requirements. New Hampshire has voluntarily chosen to par-

ticipate in Title XIX and has enacted a state plan which vests initial authority to promulgate rules and regulations in the director of its Division of Welfare. Once the director has proposed a rule or regulation, it must then be forwarded to the state welfare commissioner before it can be promulgated. RSA Chapters 161:4 and 126–A:11.

3. "167:6 Definitions
VII. For the purposes hereof a person shall be eligible for medical assistance who is a recipient of categorical assistance or a medically needy person as defined by the director of welfare, who resides in this state or is a resident and is temporarily absent, and whose income and resources are insufficient to meet the cost of necesary medical care and services."

bled", as used in the categorical assistance portion of the New Hampshire enabling statute, nor "medically needy", as used in the medical assistance portion, are statutorily defined.

It has been conceded that plaintiff in the instant case does not qualify for categorical assistance because she does not meet the relevant need criteria. The only question remaining under New Hampshire law, then, is whether she is a "medically needy" person. For purposes of this inquiry, whatever limitations are implicit in the phrase "permanently and totally disabled", as used to determine eligibility for categorical assistance, are irrelevant. There is simply no indication on the face of the New Hampshire enabling statute that would allow a state court to rule that "medically needy" and "permanently and totally disabled" were meant by the New Hampshire legislature to be mere shorthand references for each other. Indeed, the consistent separate use of the two phrases in referring to the categorical and medical assistance programs indicates, if anything, that the two were not intended to be equivalents.

This is not to say, however, that the director and the commissioner have been given unbridled discretion in defining "medically needy". The New Hampshire enabling statute contains limitations of two sorts: first, a procedural limitation that flows from the command that regulations proposed by the director be approved by the commissioner before they are promulgated and, second, substantive limitations indicated by the order in RSA 161:2, subd. VIII that the director "[c]o-operate with the federal government in carrying out the purposes of the Federal Social Security Act * * *." and, more importantly, in RSA 167:5 that he shall meet "other requirements" as are "necessary to qualify for grants-in-aid from the federal government."

There is no allegation in the instant case that the director and the commissioner have failed to follow the statutorily prescribed procedures in promulgating the eligibility limitations in question. If we were to abstain, then, the state court inquiry would necessarily focus on whatever substantive limitations on the definition of "medically needy" are inherent in the requirements that the director "co-operate" with the federal government and that he must do everything necessary to ensure that the New Hampshire program "qualifies" for federal assistance. A state court faced with this task of statutory construction could adopt one of two approaches. Since the New Hampshire medical assistance program "qualifies" at the present time for federal assistance because of the approval by the Department of Health, Education and Welfare (HEW) of New Hampshire's definition of "medically needy", the state court may well regard its review foreclosed beyond this point. It might wish to avoid putting itself in the awkward position of reviewing and disagreeing with the federal agency, HEW, which has formally approved New Hampshire's plan. In this event, abstention would have been a futile gesture. Alternatively, the state court could go further and attempt to determine whether the New Hampshire definition of "medically needy" comports with the "purposes of the Federal Social Security Act" and whether medical assistance is so administered as to fulfill all federal requirements. In this event, abstention would have achieved the bizarre result of shifting to a state court the sole task of construing federal statutes and regulations.

Unlike the enabling statute involved in the present case, the Texas statute at issue in Railroad Comm'n v. Pullman, *supra*, contained a specific substantive standard against which Commission orders could be measured. This standard was in no way limited by or dependent on federal statutory or constitutional guarantees. The Texas statute provided in relevant part that

"[p]ower and authority are hereby conferred upon the Railroad Commission of Texas over all railroads, [etc.], and it is hereby made the duty of the said Commission * * * to prevent any and all * * * abuses in the

conduct of their business and to do and perform such other duties and details in connection therewith as may be provided by law." Vernon's Anno. Texas Civil Statutes, Article 6445.

Since it seemed probable to the Court that the actions complained of in *Pullman* (requiring a conductor—always white—to be in attendance on every Pullman) would be found by a state court to be unauthorized under the applicable state statutory standard, abstention seemed justified as a way to "avoid the waste of a tentative decision as well as the friction of a premature constitutional adjudication." *Id.* at 500, 61 S.Ct. at 645.

The New Hampshire enabling statute at issue here contains no standard whatsoever for determining whether there has been an abuse of discretion by state welfare administrators in defining "medically needy" apart from the federal standards. Therefore, neither *Pullman* nor other cases which say that abstention is proper where the challenged state statute or regulation is "fairly open to interpretation" are relevant. *See, e. g.*, Harrison v. N.A.A.C.P., 360 U.S. 167, 79 S.Ct. 1025, 3 L.Ed.2d 1152 (1959). The only thing fairly open to interpretation here is how far afield the New Hampshire welfare officials may range in defining "medically needy" before running up against federal statutory and constitutional law.

The question in the instant case, therefore, is whether a federal court is justified in abstaining if the dispositive issue is one of federal law and there is no alternative state standard on which the decision can be based. The answer to the question thus posed is clearly "no". Zwickler v. Koota, 389 U.S. 241, 248, 88 S.Ct. 391, 19 L.Ed.2d 444 (1967); Harmon v. Forssenius, 380 U.S. 528, 535, 85 S.Ct. 1177, 14 L.Ed.2d 50 (1965); McNeese v. Board of Education, 373 U.S. 668, 673–674, 83 S.Ct. 1433, 10 L.Ed.2d 622 (1963); and cases cited in 1 Barron & Holtzoff § 64 n. 59 (Wright ed. 1971).[4]

II.

The structure of federal-state participation in providing medical assistance payments to needy individuals was significantly changed in 1965 with the addition of Title XIX (the so-called "Medicaid" program) to the Social Security Act of 1935.[5] Prior to that time, federal monies were available to defray the costs of state medical assistance programs only insofar as the state programs were limited to helping persons who already qualified for maintenance benefits under one of the categorical assistance portions of the Social Security Act.[6] Because of the episodic, though often severe, nature of many medical expenses, however, the federal experience with administering medical assistance as an adjunct to other federal assistance programs did not prove to be entirely satisfactory. Many persons who did not qualify for maintenance payments because their income and resources were

4. The holding in Reetz v. Bozanich, 397 U.S. 82, 90 S.Ct. 788, 25 L.Ed.2d 68 (1970), is wholly consistent with the conclusions reached above. In that case, abstention was justified by the existence in the Alaska Constitution of a provision which made the legality of the game regulations challenged by plaintiffs highly unlikely.

5. Parts A and B of Title XVIII, providing for medical care for the elderly through voluntary and compulsory insurance (popularly known as "Medicare"), were also passed as amendments to the Social Security Act in 1965. 42 U.S.C. § 1395 et seq.; Pub.L.No. 89–97, 79 Stat. 343.

6. These categorical assistance programs, whose recipients could also receive federal grants-in-aid for medical assistance, were: old-age assistance (Title I), aid to dependent children (Title IV), aid to the blind (Title X) or aid to the permanently and totally disabled (Title XIV). Ch. 809, 64 Stat. 477. After 1962 federally-subsidized medical assistance was also made available to a new category of aged, blind and disabled persons, the so-called "medically indigent", whose incomes were above state eligibility levels for categorical assistance but were not high enough to meet their medical bills. 42 U.S.C. § 1381 et seq. (Title XVI).

sufficient to meet their ordinary living expenses were nevertheless left in extreme hardship when forced to shoulder extraordinary medical expenses without public assistance. Title XIX was enacted to fill this gap. 42 U.S.C. § 1396 (effective January 1, 1966); 1965 United States Code Congressional and Administrative News at p. 1943 *et seq.*[7]

Since the intent of Congress in enacting Title XIX was to extend rather than to cut back on the availability of medical assistance to needy persons, the federal statute requires at a minimum that states receiving matching federal grants under Title XIX make medical assistance available to any individual receiving aid under one of the approved categorical assistance programs and that such assistance be in amount, duration and scope at least as great as such persons could have received under such program. 42 U.S.C. § 1396a(a) (10) (A). States are given the option of also granting medical assistance benefits to a broad range of additional persons who lack the resources to pay for needed medical services. 42 U.S.C. § 1396a(a) (10) (B). The federal regulations promulgated under Title XIX refer to the required recipients of medical assistance as "categorically needy" persons, and to the optional group as "medically needy". 45 C.F.R. § 248.10(a) (1)–(2).

The New Hampshire legislature has chosen to participate in both the mandatory and optional aspects of Title XIX. RSA Chapter 167:6 gives effect to this decision by providing that "[f]or the purposes hereof a person shall be eligible for medical assistance who is a recipient of categorical assistance or a medically needy person as defined by the director of welfare * * *." In defining "medically needy", the di-

rector, with the approval of the commissioner and HEW, has promulgated rules which require a showing both of "permanent and total disability" and of insufficient resources to meet the costs of medical care. New Hampshire Department of Health and Welfare, Medical Assistance Manual § 7550.10 (hereinafter referred to as "Manual"). A person who is "permanently and totally disabled" is defined for these purposes as someone "who has some permanent *physical* impairment that 'substantially precludes' him from engaging in useful occupations * * *." Manual §§ 7555, 7560.1. Plaintiff contends that this attempt to limit the class of persons qualifying for medical assistance as "medically needy" to those with a physical impairment is invalid because inconsistent with certain provisions of the federal statute and the regulations issued thereunder.

In assessing this claim, 42 U.S.C. § 1396a, setting out certain requirements for all states wishing to participate in the federal medical assistance program, is a useful starting point. Section 1396a(a) (10) (B) (i) provides that if a state accepts the federal invitation to provide medical assistance to persons (the so-called "medically needy") in addition to those who are already receiving categorical assistance under another state plan, it must make such assistance available "to all individuals who would, if needy, be eligible for aid or assistance under any such State plan * * *." The regulations adopted by HEW restate this section of the federal statute to require states which include the "medically needy" in their medical assistance programs to extend aid uniformly to all "needy groups that correspond to the covered categorically needy groups." C.F.R. § 248.10(b) (3).[8]

---

7. The history of the various federal medical assistance programs is traced in Stevens & Stevens, Medicaid: Anatomy of a Dilemma, Law and Contemporary Problems 348, 350–62 (Spring 1970).

8. See also 42 C.F.R. § 248.10(c), specifying additional "conditions for plan approval" under Title XIX:

"(1) All groups the State elects to include in the program are based on reasonable classifications, that is, they do not result in arbitrary or inequitable treatment of individuals or groups, or result in exclusion of groups or persons on the basis of any classification that is arbitrary or unreasonable, or is other-

The defendants apparently recognize this connection between Title XIX, providing for medical assistance, and Title XIV, providing for "aid to the permanently and totally disabled", and are therefore willing to concede plaintiff's entitlement to medical assistance *if* she is found to be a required recipient of categorical assistance under Title XIV with the exception of the applicable need requirements.[9] Manual § 6010.2. Although Congress did not specifically define "permanently and totally disabled" in connection with either of the two categorical assistance programs to which such definition would be relevant (Titles XIV and XVI), the definition adopted by HEW is as follows:

"(a) *State plan requirements.* A State plan under title XIV or XVI of the Social Security Act *must:*

(1) Contain a definition of permanently and totally disabled, showing that:

(i) 'Permanently' is related to the duration of the impairment or combination of impairments; and

wise inconsistent with the broad objectives of Title XIX of the Act.

\* \* \* \* \*

"(3) Except for need, the conditions of eligibility that are imposed on elective groups (including any groups for whose medical care and services Federal financial participation is not available) are not more stringent or more numerous than those imposed on individuals receiving aid or assistance under any of the approved State plans."

That Congress intended in passing 42 U.S.C. § 1396a to extend the availability of federally-subsidized medical care in group increments tied to and limited by the federal definition of required recipients under one of the approved categorical programs is further indicated by the sketchy legislative history that is available. The Senate Report covering the bill as passed states that " '[m]edical assistance' is defined under the bill to mean payment of all or part of the cost of care and services for individuals who would if needy, be dependent \* \* \*, or who are 65 years of age and older, blind, or permanently and totally disabled, but whose income and resources are insufficient to meet all their medical care costs." 1965

(ii) 'Totally' is related to the degree of disability.

The following definition is *recommended:*

'Permanently and totally disabled' means that the individual has some permanent physical or mental impairment, disease, or loss, or combination thereof, that substantially precludes him from engaging in useful occupations within his competence, such as holding a job." [Emphasis supplied.] 45 C.F.R. § 233.80(a) (1).

Instead of attempting to find justification for its "source" limitations—that is, limitations of eligibility which derive from a distinction between sources or types of disability—within the terms of this definition, the defendants attempt an end-run around the entire definition by arguing that it is "merely recommended" rather than mandatory.[10] While we can agree with the defendants that the states are given some latitude in promulgating a definition of "permanently and totally disabled" that establishes with clarity which groups are in-

U.S.Code Cong. and Admin. News at p. 2020.

9. HEW has recently adopted (45 C.F.R. § 248.80(a) (1) (effective February 27, 1971)) the definition of "permanently and totally disabled" used in Title XIV (45 C.F.R. § 233.80(a) (1)) to guide states in administering Title XIX. Because of our view that the federal statute mandates that the same definition of "permanently and totally disabled" be used in both titles, the absence of this regulation in Title XIX at the time plaintiff applied for medical assistance is unimportant.

10. The implications of defendants' argument that the federal statute and regulations promulgated thereunder give states unlimited authority to exclude classes of applicants for medical assistance on the basis of the source of their disability can perhaps be demonstrated most clearly by noting, as counsel for defendants candidly admitted in oral argument, that such a reading would also permit states to exclude from their medical assistance programs all persons who suffer from physical as opposed to mental impairments.

cluded and which are excluded under the assistance plans to which such definition is relevant, 45 C.F.R. § 248.10(c) (2), and that the actual text of the HEW definition is "merely recommended", we can not agree with the contention that the elements of an acceptable definition under Titles XIV, XVI and XIX are similarly left to the states' discretion. The applicable HEW regulation clearly states that an acceptable state plan under Titles XIV, XVI and XIX *must* contain a definition of "permanently and totally disabled" showing that "permanently" relates to the duration of the impairment or combination of impairments and that "totally" relates to the degree of the disability. Nowhere in the federal statute, in the applicable regulations, or in the legislative history is there any indication that participating states may specify elements of permanent and total disability that do not relate either to the duration or the degree of the impairment.[11] Indeed, even in the absence of any regulations in point, the plain meaning of "permanently and totally" as used in the statute to refer to the intended beneficiaries of federally-subsidized assistance negates the permissibility of source limitations such as those employed by New Hampshire. *See* King v. Smith, 392 U.S. 309, 330, 88 S. Ct. 2128, 20 L.Ed.2d 1118 (1968); Stoddard v. Fisher, 330 F.Supp. 566 (July 20, 1971).

■ Since 45 C.F.R. § 233.80(a) (1) (i)–(ii), consistently with our interpretation of the plain meaning of the federal statute, is phrased in obligatory rather than in permissive terms, and since the defendants do not contend that

11. Defendants attempt to gain support for their concept of a broad range of options in state definitions of disability from a regulation, 45 C.F.R. § 248.10 (b) (1) (iii), which provides that a state plan under Title XIX may include

"Persons who would be eligible for financial assistance under another State public assistance plan, except that the State plan imposes eligibility conditions more stringent than, or in addition to those required under the Social Security Act. For example, persons who are needy and 18 years of age or older and permanently and totally disabled under the Federal definition of permanent and total disability, but who are excluded under the State's more restricted definition of disability; or persons who would be eligible for AFDC if the State's program covered families with children deprived of parental support or care to the full extent permitted under title IV–A of the Act, including AFDC for families with unemployed fathers."

This exceptionally labyrinthine regulation must, of course, be read in the light of both the federal statute and 45 C.F.R. § 233.80(a) (1), which requires a state disability definition to be linked to duration and degree. So read, its reference to "more stringent" eligibility conditions relates to permissible marginal variations in definitions of "total" or "permanent" and to statutorily permitted exclusions.

For example, the recommended federal definition provides that a person's "ability to keep house or to care for others would be the appropriate test for (and only for) individuals, such as housewives, who were engaged in this occupation prior to the disability and do not have a history of gainful employment. * * * " 45 C.F.R. § 248.80(a) (1). *See also* 45 C.F.R. § 233.80(a) (1). We interpret this statement as a recommendation only and would regard as consistent with the federal statute and the regulations a state definition of "permanently and totally disabled" which defined "totally" so as to exclude any person with the capacity to perform household chores regardless of whether such person became disabled before any sort of gainful employment became possible (e. g., an impairment present since birth) or whether the person was at one time engaged in a gainful occupation but whose present disability makes her unfit to perform other than household chores.

Similarly, state plans under Title XIX may include children of unemployed fathers who would qualify for categorical assistance if the state AFDC plan included families with unemployed fathers. This inclusion is expressly a matter of state option. 42 U.S.C. § 607. The regulation discussed in this footnote gives the state a further option: a state which does not give AFDC benefits to families with unemployed fathers may nevertheless give Title XIX medical assistance to such families.

plaintiff's impairment though mental rather than physical is not as "total" and "permanent" as are the impairments of other persons to whom it extends categorical assistance under Titles XIV, XVI and XIX,[12] we hold that plaintiff is entitled to receive medical care as a "medically needy" person under Title XIX of the Social Security Act.[13] Because our holding is based on statutory grounds, we do not reach plaintiff's constitutional arguments.

Judgment will be entered for the plaintiff declaring that sections 7555 and 7560.1 of the regulations of the State of New Hampshire, Department of Health and Welfare, found in the New Hampshire Medical Assistance Manual, are inconsistent with Title XIX of the Social Security Act and the HEW regulations adopted thereunder, and are consequently void and unenforceable.

12. In affirming the decision of the New Hampshire Bureau of Medical Service that plaintiff did not qualify for assistance as "permanently and totally disabled", the New Hampshire Welfare Appeals Board stated that

"[e]veryone recognizes that her need is as great as that of a physically handicapped person, but the State Funds needed to cover all disabled would be enormous.

"The Board reluctantly agrees that our Aid to Permanently and Totally Disabled program does not cover cases like [plaintiff's]."

13. Since we hold that New Hampshire's exclusion of persons with totally and permanently disabling mental impairments as beneficiaries of medical assistance is inconsistent with the federal statute and with the regulations promulgated thereunder, we regard the HEW Regional Commissioner's approval of such exclusion as having no effect. King v. Smith, 392 U.S. 309, 333 n. 34, 88 S.Ct. 2128, 20 L.Ed.2d 1118 (1968).