Martin GRAVES et al., Plaintiffs,

v.

Dean FISHER, M.D., et al., Defendants.

Civ. A. No. 12-64.

United States District Court, D. Maine, S. D.

July 7, 1972.

Robert E. Mittel, Thomas B. Benjamin, Portland, Me., for plaintiffs.

Keith N. Edgerly, Asst. Atty. Gen., Jon R. Doyle, Augusta, Me., for defendants.

Before COFFIN, Circuit Judge, and GIGNOUX and BOWNES, District Judges.

## OPINION

COFFIN, Circuit Judge.

The two plaintiffs in this case sue individually and on behalf of other Maine residents similarly situated pursuant to 42 U.S.C. § 1983, the Fourteenth Amendment and the Social Security Act seeking a declaration of the invalidity of a regulation of the State of Maine Department of Health and Welfare and an injunction prohibiting its enforcement. Since the requirements of 28 U.S.C. § 2281 were satisfied, a three-judge court was convened. All relevant facts were stipulated.

Both of the named plaintiffs are presently in their fifties and have been unemployed for some time due to what have been diagnosed as disabling nervous disorders.[1] In 1970 both plaintiffs applied for disability benefits under the Aid to the Aged, Blind and Disabled (AABD) program of the Maine Department of Health and Welfare but were denied assistance because of a lack of "objective medical evidence" indicating "permanent and total disability", as the latter phrase is defined by the Department. The original decision of the Department in denying benefits was appealed in both cases but both denials were subsequently affirmed.

The Maine Department of Health and Welfare's AABD program is administered in cooperation with the federal government under Title XVI of the Social Security Act, 42 U.S.C. § 1381 et seq. Title XVI was added to the Act in 1962 in the interest of administrative convenience, giving the states the option of operating all of their adult public assistance programs under a single state plan. 1962 U.S.Code Cong. & Adm. News at p. 1976. In electing to participate in this combined adult program, 22 M.R.S.A. § 3353 (1963), the Maine State Legislature passed enabling legislation which entrusted to the Department of Health and Welfare the task of working out the details of the program and of drawing up a state plan consistent with federal guidelines. 22 M.R.S.A. §§ 3351, 3353 (1963).

In prescribing eligibility requirements for those persons wishing to apply for assistance as "permanently and totally disabled", the Department has defined "disability" so as to exclude persons suffering solely from psychoneurotic disorders, regardless of severity or permanence, while including those persons suffering from "a physical impairment or diagnosed psychosis or combinations of impairments including psychoses and emotional disorders" and from mental retardation "of greater than mild degree".[2] Maine Public Assistance Pay-

---

1. Plaintiff Graves is 59 years old and has been unable with the exception of one month in 1968, to obtain employment since 1966. His illness has been diagnosed as chronic anxiety with associated depression, blackout spells and vomiting. Plaintiff Pellerin is 54 years old and has been unable to obtain employment since 1959. She has been diagnosed as suffering from a chronic involutional melancholia and depressive reaction. Both plaintiffs currently receive $26.00 per week in Social Security Disability benefits and have no other income and no assets other than a minimum of household furnishings.

2. "Aid to the Aged, Blind or Disabled—client must have a condition that reduces his ability to function as a wage earner or homemaker and which meets the test of totality and permanency. DISABILITY—disability is interpreted to mean a state of being in which the

ments Manual ch. II, sec. B, at 3 (Rev. 11–1–69). The Department of Health and Welfare has conceded that plaintiffs' psychoneuroses are sufficiently severe and permanent to make them eligible for AABD benefits and that the sole reason for their exclusion was that it is the Department's policy to assist persons with emotional disorders only when those disorders appear in combination with physical disability or a diagnosed psychosis.[3] It is this threshold exclusion, employing the source of the impairment as a trigger of eligibility, to which the plaintiffs object on statutory and constitutional grounds.

In Boisvert v. Zeiller, 334 F.Supp. 403 (D.N.H.1971) (three-judge court), the court—consisting of the members of this panel—was confronted with a similar New Hampshire welfare regulation which limited Medicaid (Title XIX) recipients to those persons with permanently and totally disabling *physical* impairments. In invalidating this limitation, the court noted:

"[t]he applicable HEW regulation clearly states that an acceptable state plan under Titles XIV, XVI and XIX *must* contain a definition of 'permanently and totally disabled' showing that 'permanently' relates to the duration of the impairment or combination of impairments and that 'totally' relates to the degree of the disability. Nowhere in the federal statute, in the applicable regulations, or in the legislative history is there any indication that participating states may specify elements of permanent and total disability that do not relate either to the duration or the degree of the impairment. Indeed, even in the absence of any regulations in point, the plain meaning of 'permanently and totally' as used in the statute to refer to the intended beneficiaries of federally-subsidized assistance negates the permissibility of source limitations such as those employed by New Hampshire. See King v. Smith, 392 U.S. 309, 330, 88 S.Ct. 2128, 20 L.Ed.2d 1118 (1968); Stoddard v. Fisher, D.C., 330 F.Supp. 566 (1971)." *Id.* at 410.[4]

*See also* Carleson v. Remillard, 406 U.S. 598, 92 S.Ct. 1932, 32 L.Ed.2d 352 (1972); Townsend v. Swank, 404 U.S. 282, 92 S.Ct. 502, 30 L.Ed.2d 448 (1971).

The Department attempts to dismiss *Boisvert* by arguing that as a category persons suffering from psychoneurotic disorders tend to be less seriously or permanently impaired than do persons falling within the included categories and that the state's definition is there-

---

individual is substantially precluded from engaging in useful occupation within his competence, such as holding a job or homemaking, because of:
1) A physical impairment or diagnosed psychoses or combinations of impairments including psychosis and emotional disorders, which are verifiable by objective medical evidence and which result in marked impairment of function.
2) Mental retardation of greater than mild degree verifiable by objective medical or psychological evidence to the extent that training has not been satisfactorily accomplished and the person cannot engage in a useful occupation, including homemaking." Maine Public Assistance Payments Manual, ch. II, sec. B, p. 3.

3. While the stipulation was not completely clear on this point, counsel for the state removed any ambiguities as to the De-

partment's position in response to questions during oral argument.

4. The mandatory components of a state plan definition of "permanently and totally disabled" are identical under Titles XIV, XVI and XIX. The HEW regulation governing state plan requirements under Titles XIV and XVI provides as follows:

(a) *State plan requirements.* A State plan under title XIV or XVI of the Social Security Act must:

(1) Contain a definition of permanently and totally disabled, showing that:

(i) "Permanently" is related to the duration of the impairment or combination of impairments; and

(ii) "Totally" is related to the degree of disability. 45 C.F.R. § 233.80(a)(1). *See also* 45 C.F.R. § 248.80(a)(1).

fore "reasonable".[5] In support of the latter proposition, the Department cites 42 U.S.C. § 1382(a)(13) which provides that state plans under Title XVI shall "include reasonable standards, consistent with the objectives of this subchapter, for determining eligibility for and the extent of aid or assistance under the plan . . . ." and the decision of the Supreme Court in Jefferson v. Hackney, 406 U.S. 535, 92 S.Ct. 1724, 32 L. Ed.2d 285 (1972).

■ The first problem with the Department's argument is that we are not persuaded of the reasonableness of a rule which excludes an entire category of disabled persons on the basis of an assessment of the average functional impairment of persons within that category. If an applicant can prove that his disability is the functional equivalent of that of other persons receiving assistance, the source of or medical definition of his disability should be irrelevant. Secondly, the reference in 42 U.S.C. § 1382(a)(13) to "reasonable standards . . . for determining eligibility" cannot be construed as a license to states to introduce eligibility conditions which relate neither to the duration nor to the degree of an applicant's impairment. Its purpose instead is to limit the tests which may be used to measure these two mandatory components of eligibility to those which are "reasonable". In the usual case, for example, the "totality" of a specific impairment is reasonably measured by the applicant's ability to engage in remunerative employment. In the words of the applicable

HEW regulation, "the ability to keep house or to care for others would be the appropriate test for (and only for) individuals, such as housewives, who were engaged in this occupation prior to the disability and do not have a history of gainful employment. . . ." 45 C.F.R. § 233.80(a), 36 Fed.Reg. 3867 (1971). See Boisvert v. Zeiller, *supra* at 410 n. 11. And finally, Jefferson v. Hackney, *supra*, provides no support for the challenged exclusion since the Court was there concerned only with the validity of a percentage reduction system for setting the level of benefits under a state's AFDC program (Title IV) and not with the exclusion of an entire class of otherwise eligible beneficiaries.

■ We conclude, therefore, that the Maine Department of Health and Welfare AABD regulations are inconsistent with the Social Security Act and the regulations promulgated thereunder and are therefore void and unenforceable insofar as they purport to exclude a category of applicants for disability assistance on the basis of the source of a diagnosed impairment.[6] Since the Department of Health and Welfare has conceded that the named plaintiffs would be eligible for assistance but for this categorical exclusion, we hold that they are entitled to receive benefits. The unnamed members of the class are entitled to a redetermination of eligibility under guidelines which relate only to the duration and severity of their impairment.[7]

Judgment will be entered for the plaintiffs declaring that the regulations set forth in Maine Public Assistance

---

5. HEW, in its amicus brief which we solicited, attempts to defend the Maine rule on different grounds: "[Maine] may have enough resources available to assist only the more seriously impaired, it may desire to assist only those whose mental disorders are generally considered to be qualitatively similar to physical disorders; or it may wish to limit assistance to those whose mental disorders can be medically diagnosed to objective criteria." All of these reasons were even more pertinent to the physical-mental dichotomy invalidated in *Boisvert*. *See also id.* at n. 13.

6. We do not reach the constitutional issues raised by plaintiffs because of our holding on statutory grounds.

7. The defendants have agreed that if the challenged regulation is found by this court to be invalid, as we have found, all members of the complaining class who are determined to be entitled to benefits shall be given retroactive payment of such benefits from the date of application; consequently, no injunction will issue.

Payments Manual ch. II, sec. B, at 3 (Rev. 11–1–69), insofar as it defines "disability" so as to exclude persons suffering solely from psychoneurotic disorders, is void and unenforceable because it. is inconsistent with Title XVI of the Social Security Act and the HEW regulations adopted thereunder.