Dorina **BOUCHER** et al., Plaintiffs,

v.

Steven A. **MINTER**, Defendant.

Civ. A. No. 72–1557–G.

United States District Court,
D. Massachusetts.

Oct. 20, 1972.

convened pursuant to 28 U.S.C. § 2281. The parties filed a stipulation of facts, affidavits, memoranda of law and cross-motions for summary judgment, on which the court heard oral argument.

Plaintiffs are needy minor children represented by their mothers, who protest the extent of the reduction in assistance granted to them upon their mothers' remarriage and their living in the same household with their stepfathers.[1] Under Massachusetts law, Worcester v. Marchant, 1834, 31 (14 Rick.) Mass. 510, a stepfather is not legally obligated to support his stepchildren. The AFDC program in Massachusetts is administered in accordance with a Public Assistance Policies Manual of the Department of Public Welfare and plaintiffs do not complain about any of its provisions. Rather, they claim violations of the due process and equal protection clauses of the Fourteenth Amendment and of the Social Security Act, 42 U.S.C. §§ 601 et seq., especially §§ 602 (a)(7), 606(a) and implementing regulations in the defendant's application of Chapter IV, § A, Part I of the manual and promulgation of an interdepartmental memorandum issued April 1, 1971, which is enforced throughout the commonwealth. The amount of AFDC assistance grants depends in part upon the living arrangements of AFDC beneficiaries, who are divided into four groups which are described in the manual as follows:

John J. Bush Jr., Fitchburg, Mass., for plaintiffs.

Nicholas Arenella, Asst. Atty. Gen., Boston, Mass., for defendants.

Before ALDRICH, Circuit Judge, JULIAN and GARRITY, District Judges.

## MEMORANDUM OF DECISION

GARRITY, District Judge.

This is a civil rights action pursuant to 42 U.S.C. § 1983 in which plaintiff recipients of Aid to Families with Dependent Children (AFDC), on behalf of themselves and others similarly situated, challenge on constitutional grounds one aspect of the administration of the AFDC program by the defendant Commissioner of the Massachusetts Department of Public Welfare. Jurisdiction lies under 28 U.S.C. §§ 1331 and 1343 (3) and a three-judge district court was

*Group I—Full Common Household Expenses*

This Group includes any situation where the AFDC family is responsible for the full cost of rent or carrying charges, fuel and utilities.

*Group II—Shared Common Household Expenses with Non-recipient*

This Group includes any type of living arrangement where the AFDC

---

1. The stipulation and affidavits do not disclose whether the children and mother changed their residence upon her remarriage or whether the stepfather moved into the residence previously occupied by them.

family shares the cost of rent or carrying Charges, fuel and utilities with any person who is not a recipient of OAA or DA.

*Group III—Shared Common Household Expenses with a Recipient*

This Group includes any type of living arrangement when the AFDC family shares the cost of rent or carrying charges, fuel and utilities with a person who is a recipient of OAA or DA.

*Group IV—No Common Household Expenses*

This Group includes any type of living arrangement when the AFDC family does not pay rent or carrying charges, fuel and utilities.

An accompanying table used in determining the amounts of assistance grants is geared to the number of persons participating in a grant and, insofar as relevant to this case which involves families of five or fewer children, is as follows:

| Group | 1 | 2 | 3 | 4 | 5 |
|---|---|---|---|---|---|
| I | | 187.60 | 217.60 | 247.70 | 277.70 |
| II | 84.70 | 133.00 | 163.00 | 193.10 | 223.10 |
| III | 100.30 | 148.60 | 178.60 | 208.70 | 238.70 |
| IV | 30.10 | 60.10 | 90.20 | 120.20 | 150.30 |

The interdepartmental memorandum dealing with the reclassification of plaintiffs as a result of their mothers' remarriage, dated April 1, 1971 and entitled "Budgeting—Group II and Group IV—AFDC", provides in pertinent part as follows:

Primarily, all AFDC cases where the grantee-relatives are not included in the assistance plan are to be budgeted in Group IV. This would include, in all cases, the remarried mother, and most cases where grandparents, uncles, aunts, etc., are the grantee-relatives and are not themselves in need. If the grantee-relative is aided on either OAA or DA, then the AFDC grant would be determined in Group III. The only instance when AFDC children would be budgeted in Group II would be situations where the grantee-relative, while not receiving OAA or DA is determined to be on the border line of need, e. g., a grandmother is the grantee-relative, is not receiving assistance but her only income is from Social Security benefits; an uncle who is the grantee-relative, is not receiving assistance, but has a rather large family and has only low earnings from a full time job.

Budgets calculated for Group IV beneficiaries do not include any shelter allowance covering the cost of rent or mortgage payments, fuel and utilities.[2] AFDC families classified in the other three groups receive either all or part of such household expenses. When a shelter allowance is included in a grant, it is awarded to the family unit as a whole and the amount does not depend on the number of members in the family unit; i. e., the AFDC family including several children receives the same shelter allowance as one including an only child. Plaintiffs in the instant case are all stepchildren of their mothers' new husbands, none of them having been adopted by their stepfathers. In each instance, when assistance was about to be reduced on account of the mother's remarriage, plaintiffs were notified of the proposed reductions in benefits and were given an opportunity to be heard and to appeal; but only one of the plaintiffs requested a conference and none

2. The nature and varying components of the shelter allowance to recipients of public assistance in Pennsylvania is described in detail in Groff v. Wohlgemuth, E.D.Pa.1971, 328 F.Supp. 1016, wherein it is stated, at 1020, that 49 of the 50 states provide for separate shelter and utilities allowances.

of them appealed from the reduction of their assistance grants.

■ ■ Plaintiffs' failure to appeal their reclassification is urged by the defendant as a sufficient basis for dismissing the complaint or entering summary judgment for the defendant. We reject defendant's contention both because exhaustion of state administrative remedies is not required in civil rights actions where the constitutional challenge is sufficiently substantial to require the convening of a three-judge court, King v. Smith, 1968, 392 U.S. 309, 312, n. 4, 88 S.Ct. 2128, 20 L.Ed.2d 1118, and because the plaintiffs' administrative remedies in this case, in the light of defendant's fixed policy, are illusory. It is clear from the interdepartmental memorandum of April 1, 1971, and was reaffirmed by defense counsel in oral argument, that had plaintiffs appealed, the only issue on which evidence would have been accepted by the hearing officer was whether their mothers had in fact remarried. No evidence of the particular living arrangements of the plaintiffs or of the financial resources or concern of their stepfathers would have been entertained.[3] Defendant's reclassification policy in the event of the mother's remarriage is inflexible and automatic and unrelated to the financial and other relationships between the children and their stepfathers.

■ The fundamental principles which control the court's consideration of the question presented in this case are well settled. Questions as to the constitutionality of various aspects of AFDC programs have been before the Supreme Court of the United States on numerous occasions. Several of its decisions have clarified and particularized the axiom originally stated in King v. Smith, su-

pra at 318, 88 S.Ct. at 2134, that "States have considerable latitude in allocating their AFDC resources . . . ." The statement in Dandridge v. Williams, 1970, 397 U.S. 471, 485, 90 S.Ct. 1153, 25 L.Ed.2d 491, that "a State does not violate the Equal Protection Clause merely because the classifications made by its laws are imperfect" was reemphasized during the Court term just ended in Jefferson v. Hackney, 406 U.S. 535, 92 S.Ct. 1724, 32 L.Ed.2d 285. From the plaintiffs' standpoint, Carleson v. Remillard, 406 U.S. 598, 92 S.Ct. 1932, 32 L.Ed.2d 352, reiterated a principle on which they rely, that "the presence of the parent in the home who has the legal obligation to support is the key to the AFDC program," citing King v. Smith, supra, and Lewis v. Martin, 1970, 397 U.S. 552, 559, 90 S.Ct. 1282, 25 L.Ed.2d 561. The Lewis case upheld the validity of the H.E.W. regulations promulgated in the wake of King v. Smith, which held that the term "parent" in the context of AFDC aid includes only a person with a legal duty of support and does not include stepfathers except those who by applicable state law are obliged to support their stepchildren. The current regulations appear at 45 CFR § 233.90 (a), 36 Fed.Reg. 3868, and provide in pertinent part as follows:

(a) State plan requirement. A State plan under title IV–A of the Social Security Act must provide that the determination whether a child has been deprived of parental support or care by reason of the death, continued absence from the home, or physical or mental incapacity of a parent, or (if the State plan includes such cases) the unemployment of his father, will be made only in relation to the child's natural or adoptive parent, or in relation to the child's step-parent who is

---

3. Subsequent to the hearing, plaintiffs' counsel forwarded copies of some of the papers in a state court case, Little v. Minter, Worcester County Superior Court in Equity No. 3956, involving the same issue as presented in the instant case. There plaintiffs appealed administratively and their appeal was denied by

the referee for the reason that "It is Department policy that when an AFDC mother remarries that the new husband is responsible for all common household expenses, including rent, fuel and utilities . . . ." Upon judicial review by the Massachusetts Superior Court, the decision of the referee was affirmed.

ceremonially married to the child's natural or adoptive parent and is legally obligated to support the child under State law of general applicability which requires step-parents to support stepchildren to the same extent that natural or adoptive parents are required to support their children. Under this requirement, the inclusion in the family, or the presence in the home, of a "substitute parent" or "man-in-the-house" or any individual other than one described in this paragraph is not an acceptable basis for a finding of ineligibility or for assuming the availability of income by the State. In establishing financial eligibility and the amount of the assistance payment, only such net income as is actually available for current use on a regular basis will be considered, and the income only of the parent described in the first sentence of this paragraph will be considered available for children in the household in the absence of proof of actual contributions.

In defendant's affidavit and legal memorandum and at oral argument, defendant sought to justify his conclusive presumption that an AFDC family does not pay household expenses, and therefore needs no shelter allowance following the mother's remarriage, basically on the ground that the remarriage destroyed the AFDC family unit. Defendant's theory is that before the mother's remarriage the shelter allowance was part of the grant to the mother as a member of the AFDC family and that when, by reason of her remarriage, she became no longer eligible to be included as a person participating in an AFDC grant, "the family unit now becomes the wife and the husband and the children now become eligible recipients who reside in another household."

In our opinion, defendant misconceives the policy considerations underlying the AFDC program. These considerations remain the provision of basic necessities including shelter to needy children and the need for a method of doing so while preserving as nearly as possible a conventional family structure with its concomitant sociological benefits to the children. What we believe defendant fails to perceive is that the mother before remarriage received, in reality, two shelter payments: one for her own shelter, indirectly for the benefit of the children because they needed her presence, and the other directly for the benefit of the children, viz., for their own shelter, paid to her as guardian and conduit. Although she has become a member of her new husband's family, the mother remains the head of a family, distinct for purposes of AFDC, comprised of herself and her children and is no less logical a conduit for shelter payments for the children if they in fact remain in need. That family unit remains unchanged since the stepfather does not join it in law; and if he does not join it in fact, by economic participation in its expenses, there is no basis in law or fact for an irrebuttable presumption that the shelter needs of the children have not continued despite the remarriage.

Since the AFDC family survives the remarriage of the mother, the defendant's policy of automatic reclassification into Group IV offends both the due process and equal protection clauses of the Fourteenth Amendment. The irrebuttable presumption underlying the defendant's policy, namely, that after the mother's remarriage the children in the AFDC family do not need a shelter allowance and that household expenses will be paid by the stepfather, is unrealistic and arbitrary. It is true that a husband is obligated by common law to provide shelter and living accommodations for his wife, but he is under no similar obligation regarding his stepchildren, and the needs of the stepchildren are separable from those of their mother. Given the sizeable discretion exercisable by the husband as to the manner and style in which he may provide shelter, see 41 C.J.S. Husband & Wife § 15(d) n. 87, he may choose to do so in quarters too small to include the children. A stepfather's financial re-

sources may be so limited as to prevent his heating the children's bedrooms or providing more than a single bedroom, or for that matter any bedroom, for several children. Minimal essential household expenses must be paid from some source and it is self-evident that such expenses of a household including several children will be greater than if the household be comprised of only a husband and wife. If plaintiffs' stepfathers are unable or unwilling to provide decent housing and heat and utilities for them, it is reasonable to assume that assistance grants intended to cover only food and clothing will be resorted to. We agree with Jenkins v. Georges, W.D. Pa.1969, 312 F.Supp. 289, 292, where the court stated:

> Whether the "substitute parent" must rent or build additional space, or incur increased utility expenses, or subject the premises to greater deterioration and additional repairs to accommodate the child is not open to factual inquiry. In short, whether the non-recipient can or does actually contribute to the child's support is immaterial under the Pennsylvania schema. Its regulations convert a factual possibility into an assumption of law. This it may not do.

If instead of automatically reclassifying plaintiffs in Group IV defendant reclassified them in Group II, a different situation would be presented and a different result reached.[5] Dullea v. Ott, D.Mass.1970, 316 F.Supp. 1273, 1277.

■ That plaintiffs are also being denied equal protection of the laws appears from the terms of the defendant's interdepartmental memorandum dated April 1, 1971. Children who live with grantee-relatives other than stepfathers are not automatically reclassified in Group IV. Where a relative not receiving old age or disability assistance is determined to be on the borderline of need, e. g., an uncle with a rather large family and only low earnings from a fulltime job, the children may be found to be members of an AFDC family which shares the cost of household expenses. The fact that an uncle is under no obligation to provide housing for his sister, in contrast with the stepfather's obligation to his wife, is not in our opinion an adequate basis for treating the children differently, without any investigation or inquiry as to the stepfather's resources. It is the welfare of the children which was Congress's primary concern in establishing the AFDC program, King v. Smith, *supra* at 325, 88 S.Ct. 2128, and the children's needs are the same in both situations. It seems ironic that if plaintiffs' mothers started living with their present husbands without benefit of matrimony, plaintiffs would in all likelihood have been reclassified in Group II. Cf. Stoddard v. Fisher, D. Me.1971, 330 F.Supp. 566, 571, n. 8.

■ Finally, the defendant's interdepartmental memorandum and inflexible policy contravene the purpose of the Act and the pertinent regulation, 45 C.F.R. § 233.90(a). Cf. Rosen et al. v. Hursh et al., 8 Cir., 464 F.2d 731, decided July 26, 1972. This regulation does not apply only to determinations of eligibility for assistance, the so-called "standard of need", but also to the amount of the assistance payment, that is, what "level of benefits" will be paid. Cf. Rosado v. Wyman, 1970, 397 U.S. 397, 408, 90 S. Ct. 1207, 25 L.Ed.2d 442. Under this

---

5. At oral argument plaintiffs' counsel stated that plaintiffs would have no complaint if the grants were reduced only to the extent consonant with reclassification from Group I to Group II. If such reductions would not reflect adequately the mothers' receipt of shelter from their new husbands, it may be permissible for the defendant to establish a separate grouping designed specifically for children whose mothers remarry.

regulation the income of a stepfather who is not obliged under state law to support his stepchildren may not be considered in establishing the amount of the assistance payment "in the absence of proof of actual contributions." In this case defendant has made no effort to learn whether or not plaintiffs' stepfathers have made any actual contributions to their household expenses.

Defendant's motion to dismiss and for summary judgment is therefore denied. Plaintiffs' motion for summary judgment will be allowed to the extent that it seeks a declaratory judgment that defendant's statewide practice and interdepartmental memorandum dated April 1, 1971 are unconstitutional under the Fourteenth Amendment of the Constitution of the United States and that defendant be enjoined permanently from automatically reclassifying in Group IV children in AFDC families whose mothers remarry, i. e., in the absence of proof of actual contributions.

Regarding plaintiffs' claims for damages, the court does not rule upon them at this time, both because plaintiffs have shown no particular damages and plaintiffs' counsel indicated at oral argument that plaintiffs might be content with only declaratory and injunctive relief.[6] If plaintiffs wish to pursue their claims for damages, it is ordered that within ten days of receipt of a copy of this opinion they file affidavits and a supporting memorandum of law showing their entitlement thereto, in which event defendant shall have an additional ten days in which to file reply affidavits and memorandum. Otherwise final judgment will be entered granting only the declaratory and injunctive relief herein allowed.

---

[6.] Whether the Eleventh Amendment prohibits a court from awarding retroactive benefits in an AFDC case is a close and complex question on which the Supreme Court has not directly ruled. See Rothstein et al. v. Wyman, 2 Cir., 467 F.2d 226 decided September 7, 1972 and cases cited therein, especially Westberry v. Fisher, D.Me.1970, 309 F.Supp. 12, 18–20.