Rose HURLEY, Individually and on behalf of her minor dependent children, Doreen Hurley, et al., Plaintiffs,

v.

Barry VAN LARE, Individually and in his capacity as Acting Commissioner of the Department of Social Services of the State of New York, et al., Defendants.

No. 72 Civ. 3423.

United States District Court,
S. D. New York.

Oct. 3, 1973.

———————◆———————

Legal Aid Society of Westchester County (Martin A. Schwartz, Jerold S. Slate, Lawrence S. Kahn, White Plains, N. Y., of counsel), for plaintiffs and intervenor D'Alessio.

Legal Aid Bureau of Buffalo, Inc. (Michael A. O'Connor, Buffalo, N. Y., Margaret B. Dadd, Attica, N. Y., of counsel), for intervenor Clark.

Louis J. Lefkowitz, Atty. Gen., of N. Y. (Judith A. Gordon, New York City, Gene B. Mechanic, Brooklyn, N. Y., of counsel), for defendants Van Lare and Lavine.

John J. S. Mead, Co. Atty., Westchester County (Richard W. McAtamney, White Plains, N. Y., of counsel), for defendant Kurtis.

## OPINION

BAUMAN, District Judge.

Before the court is yet another action challenging the manner in which the State of New York allocates its welfare funds. Plaintiff and her three minor children received public assistance pursuant to the Aid to Families with Dependent Children (AFDC) program. The action is brought on their behalf, and on behalf of all others similarly situated, to enjoin the enforcement of 18 N. Y.C.R.R. § 352.31(a)(3)(iv) [1] and 18 N. Y.C.R.R. § 352.30(c) and (d) [2] and to secure retroactive public assistance payments of which she claims to have been unlawfully deprived.

The plaintiff has moved for class determination pursuant to Rule 23 of the Federal Rules. She also seeks summary judgment pursuant to Rule 56, and thereby, a permanent injunction against the enforcement of the attacked state regulations as well as retroactive welfare payments. Plaintiff argues that these regulations are violative of the due process and equal protection clauses of the Fourteenth Amendment and repugnant to the rights of privacy and freedom of association secured by the First, Ninth, and Fourteenth Amendments. She also contends that they are violative of the Supremacy Clause (Article VI) in that they conflict with the provisions of subchapter IV of the Social Security Act, 42 U.S.C. § 601 et seq. and the regulations promulgated thereunder. The de-

[1]. 18 N.Y.C.R.R. § 352.31(a)(3)(iv) :
"§ 352.31 *Estimate of need and application of income*
(a) For applicant or recipient.
 * * * * *
(3) When a female applicant or recipient is living with a man to whom she is not married, other than on an occasional or transient basis, his available income and resources shall be applied in accordance with the following :
 * * * * *
(iv) When the man is unwilling to assume responsibility for the woman or her children, and there are no children of which he is the acknowledged or adjudicated father, he shall be treated as a lodger in accordance with section 352.30(c)."
The reference to § 352.30(c) is erroneous; it is clear from the text of the section, set out at footnote 2, infra, that the reference should be to § 352.30(d).

[2]. 18 N.Y.C.R.R. § 352.30 *Persons included in the budget*

"(c) When an applicant or recipient wilfully fails or refuses to comply with the requirements of Part 385 of this Title, the needs of the family shall be determined as if he were a member of the family, however, the grant shall be provided on a pro rata basis for the eligible family members only.
(d) A non-legally responsible relative or unrelated person in the household, who is not applying for nor receiving public assistance shall not be included in the budget and shall be deemed to be a lodger or boarding lodger. The amount which the lodger or boarding lodger pays shall be verified and treated as income to the family. For the lodger, the amount in excess of $15 per month shall be considered as income; for such boarding lodgers, the amount in excess of $60 per month shall be considered as income. In the event a lodger does not contribute at least $15 per month, the family's shelter allowance including fuel for heating, shall be a pro rata share of the regular shelter allowance."

fendants in turn have moved to dismiss the action pursuant to Rules 12(b)(1) and 12(b)(6) of the Federal Rules on the grounds that this court lacks subject matter jurisdiction and that the complaint fails to state a claim upon which relief can be granted. In addition, Phyllis D'Alessio and Loretta Clark, both mothers receiving aid under the AFDC program, seek to intervene pursuant to Rule 24(b)(2). The defendants oppose their intervention.

## I.

A brief exposition of Mrs. Hurley's situation may help illuminate the difficulty in which she and others in her purported class find themselves.[3]

Mrs. Hurley has been living apart from her husband since 1967 and claims not to have seen or heard from him since that time. From November, 1970 through February, 1971 a male who contributed nothing toward her maintenance or that of her three children lived with her. Her rent during that period was $150 per month. Upon learning of the presence of a male lodger, the Westchester County Department of Social Services, without explanation as to how the figure was reached, deducted $35 per month for the four months from plaintiff's recurring grant.

On November 12, 1970 plaintiff requested a State Fair Hearing which was held on March 22, 1971 in White Plains, New York. In a decision rendered September 20, 1971, Barry Van Lare, the Acting Commissioner of the Department of Social Services, upheld the grant reduction but ruled that the Westchester Department should have deducted $30 rather than $35 from her stipend.[4]

Plaintiff claims that she still wishes to associate and reside with this male friend, but is afraid to do so because of the anticipated reduction in her public assistance grant.

## II.

I shall first consider plaintiff's motion that this be designated a class action pursuant to Rule 23(a) [5] and Rule 23(b)(2)[6] of the Federal Rules. The proposed class would consist of "all residents of the State of New York who are or were receiving public assistance, who have had their grants reduced, terminated, suspended, or denied, or who are threatened with reduction, termination, suspension or denial, solely because of the enforcement of 18 N.Y.C.R.R. § 352.-31(a)(3)(iv) and § 352.30(c) and (d)."

It would appear that all of the requirements in the above cited rules have been met and that this may proceed as a class action. Plaintiff's efforts to demonstrate satisfaction of the numerosity requirement, Rule 23(a)(1), have

3. The ensuing account is adopted from plaintiff's statement submitted pursuant to Rule 9(g) of the Southern District Rules in support of her motion for summary judgment. With one unimportant exception, none of the facts in that statement is disputed by the defendants.

4. This computation was reached in accordance with the controverted state regulations, cited at footnotes 1 and 2, which provide that if a male lodger does not contribute at least $15 per month, the family shelter allowance shall be reduced by the lodger's *pro rata* share. The previous shelter allowance had been $150, and thus the male lodger's *pro rata* share was ⅕ x $150 or $30.

5. Rule 23(a):
"(a) *Prerequisites to a Class Action.* One or more members of a class may sue or be sued as representative parties on behalf of all only if (1) the class is so numerous that joinder of all members is impracticable, (2) there are questions of law or fact common to the class, (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class, and (4) the representative parties will fairly and adequately protect the interests of the class."

6. Rule 23(b)(2):
"(b) *Class Actions Maintainable.* An action may be maintained as a class action if the prerequisites of subdivision (a) are satisfied, and in addition:
(2) the party opposing the class has acted or refused to act on grounds generally applicable to the class, thereby making appropriate final injunctive relief or corresponding declaratory relief with respect to the class as a whole;"

been thwarted in part by the state's failure to compile any state-wide statistics on the number of recipients whose grants have been reduced because of the presence of lodgers.[7] However, the defendants did furnish statistics compiled by a research analyst in the State Department of Social Services indicating that as of November 1, 1972, there were 477 such cases in New York City. That figure alone would render the class so numerous that joinder would be impracticable, and it may reasonably be assumed that the total number in the state is far larger still.

Plaintiff's claims are typical and there can be no dispute that the questions of law or fact are common to the class. It has been frequently noted in similar cases that the state's promulgation of an unconstitutional regulation and/or its failure to comply with regulations of the Department of Health, Education & Welfare affects all welfare recipients in the same manner. Serritella v. Engelman, 339 F.Supp. 738 (D.N.J. 1972); Almenares v. Wyman, 334 F. Supp. 512 (S.D.N.Y.1971), affd., 453 F. 2d 1075 (2nd Cir. 1971). For the purpose of determining the constitutionality of the challenged regulations, it does not matter that plaintiff and some members of the class have received Fair Hearings and others have not. The exhaustion of state administrative remedies is not a prerequisite to the maintenance of an action under 42 U.S.C. § 1983. Sostre v. McGinnis, 442 F.2d 178 (2nd Cir. 1971); Carter v. Stanton, 405 U.S. 669, 92 S.Ct. 1232, 31 L.Ed.2d 569 (1972); Damico v. California, 389 U.S. 416, 88 S.Ct. 526, 19 L.Ed.2d 647 (1967). Accordingly, even where some of the named plaintiffs have exhausted their administrative remedies, the class may nevertheless include others who have not. Doe v. Lavine, 347 F.Supp. 357 (S.D.N.Y.1972); Broussard v. Schlumberger Well Services, 315 F.Supp. 506 (S.D.Tex.1970);

Miller v. International Paper Co., 408 F.2d 283 (5th Cir. 1969). Hence such factual distinctions among members of the class have little bearing on the resolution of the central question presented by this action, namely, the constitutionality of the New York regulations.

I have no doubt that the representative party will fairly and adequately protect the interests of the class. The Legal Aid Society of Westchester County, which represents both Mrs. Hurley and Mrs. D'Alessio, one of the intervenors, has demonstrated a high standard of advocacy in both its written and oral presentations before this court, and I am certain that it will continue to do so.

Finally, it is also clear that the instant action is precisely of the type contemplated by Rule 23(b)(2). The Advisory Committee Notes to Rule 23 with reference to this subsection point up its applicability:

> "This subdivision is intended to reach situations where a party has taken action or refused to take action with respect to a class, and final relief of an injunctive nature, . . . settling the legality of the behavior with respect to the class as a whole, is appropriate . . . Action or inaction is directed to a class within the meaning of this subdivision even if it has taken effect or is threatened only as to one or a few members of the class, provided it is based on grounds which have general application to the class.
>
> Illustrative are various actions in the civil-rights field where a party is charged with discriminating unlawfully against a class, usually one whose members are incapable of specific enumeration." (Citations omitted).

Examples of cases challenging state welfare laws in which class action status has been granted are legion. Almenares v. Wyman, supra; Gaddis v. Wyman, 304 F.Supp. 717 (S.D.N.Y.1969); James

---

7. See the letter of Judith A. Gordon, Assistant Attorney General, to Jerold S. Slate of the Legal Aid Society of Westchester County, appended as Exhibit C. to the Slate affidavit.

v. Goldberg, 302 F.Supp. 478 (S.D.N.Y. 1969); Doe v. Shapiro, 302 F.Supp. 761 (D.Conn.1969). The motion is designate the instant case a class action is therefore granted.

### III.

▮ I am also satisfied that this court has jurisdiction to entertain this action pursuant to 42 U.S.C. § 1983 and its jurisdictional complement, 28 U.S.C. § 1343(3). It is now well settled that jurisdiction exists under § 1343(3) only if the complaint presents a substantial constitutional question. Almenares v. Wyman, 453 F.2d 1075, 1082 (2nd Cir. 1971); Merriweather v. Burson, 439 F. 2d 1092 (5th Cir. 1971). I therefore intend to review the plaintiff's constitutional arguments. The survey shall be brief because, as shall appear more fully below, it appears that the question presented by this case can be resolved on statutory grounds alone. I therefore need consider the substantiality, but not the substance of the constitutional claims.

Plaintiff makes four separate constitutional arguments. First, she urges that the regulations, by discouraging the presence of a male lodger, exert a chilling effect on her right of free association secured by the First and Fourteenth Amendments. See generally, N. A.A.C.P. v. Alabama ex rel. Patterson, 357 U.S. 449, 78 S.Ct. 1163, 2 L.Ed.2d 1488 (1958); Bates v. City of Little Rock, 361 U.S. 516, 80 S.Ct. 412, 4 L. Ed.2d 480 (1960); Gibson v. Florida Legislative Investigation Committee, 372 U.S. 539, 83 S.Ct. 889, 9 L.Ed.2d 929 (1963). Second, she argues that they violate her right of privacy and right to freedom from governmental intrusion into the home. Griswold v. Connecticut, 381 U.S. 479, 85 S.Ct. 1678, 14 L.Ed.2d 510 (1965); Stanley v. Georgia, 394 U. S. 557, 89 S.Ct. 1243, 22 L.Ed.2d 542 (1969); Eisenstadt v. Baird, 405 U.S. 438, 92 S.Ct. 1029, 31 L.Ed.2d 349 (1972). Third, plaintiff contends that the assumption implicit in the challenged regulations that a lodger will contribute his *pro rata* share of shelter costs constitutes a conclusive presumption in violation of the Due Process Clause of the Fourteenth Amendment. Carrington v. Rash, 380 U.S. 89, 85 S.Ct. 775, 13 L. Ed.2d 675 (1965); Stanley v. Illinois, 405 U.S. 645, 92 S.Ct. 1208, 31 L.Ed.2d 551 (1972); Vlandis v. Kline, 412 U.S. 441, 93 S.Ct. 2230, 37 L.Ed.2d 63 (1973); United States Department of Agriculture v. Murry, 413 U.S. 508, 93 S.Ct. 2832, 37 L.Ed.2d 767 (1973). Her final argument is that the regulations violate the equal protection clause of the Fourteenth Amendment by discriminating arbitrarily between two classes of equally needy families: those without a lodger, who receive a full welfare stipend, and those with whom a lodger resides, and whose stipend is accordingly reduced. See Dandridge v. Williams, 397 U.S. 471, 90 S.Ct. 1153, 25 L.Ed.2d 491 (1970); Jefferson v. Hackney, 406 U.S. 435, 92 S.Ct. 1724, 32 L.Ed.2d 285 (1972).

*Without implying any judgment on the merits of the other three contentions,*[8] I find that at least plaintiff's due process argument raises a substantial constitutional question. The Supreme Court has long held that "a

---

8. From his concurring opinion in United States Department of Agriculture v. Moreno, 413 U.S. 528, at 538, 93 S.Ct. 2821, 37 L. Ed.2d 782 (1973), it is apparent that Mr. Justice Douglas would regard the arguments based on privacy and freedom of association as substantial. In considering § 3(e) of the Food Stamp Act of 1964, 7 U.S.C. § 2012 (e), which excludes from participation in the food stamp program any household containing an individual unrelated to any other member of that household, he observed:

"[t]he right of association, the right to invite the stranger into one's home is too basic in our constitutional regime to deal with roughshod." The majority found the statute violative of the Due Process Clause of the Fifth Amendment and therefore did not reach these questions. See, however, the opinion of Judge McGowan for the three judge court below, Moreno v. United States Department of Agriculture, 345 F.Supp. 310 at 314 (D.D.C.1972).

statute creating a presumption which operates to deny a fair opportunity to rebut it violates the due process clause of the Fourteenth Amendment." Heiner v. Donnan, 285 U.S. 312, 52 S.Ct. 358, 76 L.Ed. 772 (1932). To cite one recent example, the Court in Stanley v. Illinois, supra, found unconstitutional an Illinois law which made illegitimate children the wards of the state upon the death of their mothers and which consequently presumed unmarried fathers to be unfit to raise such children. It concluded that, as a matter of due process, an unmarried father was entitled to a hearing on his fitness as a parent before being deprived of his children. The Court observed that Illinois "insists on presuming rather than proving Stanley's unfitness solely because it is more convenient to presume than to prove. Under the Due Process Clause that advantage is insufficient to justify refusing a father a hearing . . . ." 405 U.S. at 658, 92 S.Ct. at 1216.

In several recent cases courts have concluded that statutes similar to those at issue here created conclusive presumptions incapable of being contravened by a factual showing. In Boucher v. Minter, 349 F.Supp. 1240 (D.Mass. 1972), a three judge court struck down a provision of the Massachusetts AFDC program which reduced the shelter allowance to needy children upon the remarriage of their mother. The court held, inter alia, "[t]he irrebuttable presumption underlying the defendants' policy, namely, that after the mother's remarriage the children in the AFDC family do not need a shelter allowance and that household expenses will be paid by the stepfather, is unrealistic and arbitrary." See also Jenkins v. Georges, 312 F.Supp. 289 (W.D.Pa.1969); Owens v. Parham, 350 F.Supp. 598 (N.D.Ga. 1972); Rosen v. Hursh, 464 F.2d 731 (8th Cir. 1972).

■ Because 18 N.Y.C.R.R. § 352.-31(a)(3)(iv) and § 352.30(c) and (d) automatically prorate a family's shelter allowance upon the presence of a male, I conclude that plaintiff's contention that a conclusive presumption is thereby created in violation of the Due Process Clause presents a substantial ₒconstitutional question and is a sufficient predicate for jurisdiction under 28 U.S.C. § 1343(3). I wish to emphasize that I do not pass on the substance of this question, both because the issue can be resolved on narrower grounds and because it would be improper for a single judge to do so. I find only that the plaintiff has adequately refuted defendants' contention that the constitutional arguments presented here are frivolous or a mere pretext for placing the statutory arguments before this court.

### IV.

■ Before turning to plaintiff's contention that the challenged New York regulations are inconsistent with regulations promulgated under the Social Security Act, two observations are in order. First, it is now established that a suit to enjoin the enforcement of a state statute on the ground of its asserted repugnancy to a federal statute does not require the convening of a three judge court. Swift and Company v. Wickham, 382 U. S. 111, 86 S.Ct. 258, 15 L.Ed.2d 194 (1965); Ex parte Buder, 271 U.S. 461, 46 S.Ct. 557, 70 L.Ed. 1036 (1926); Ex parte Bransford, 310 U.S. 354, 60 S.Ct. 947, 84 L.Ed. 1249 (1940); Case v. Bowles, 327 U.S. 92, 66 S.Ct. 438, 90 L. Ed. 552 (1946). Second, where a court is presented with both constitutional and statutory claims, it is obliged to consider first the statutory claims. Rosado v. Wyman, 397 U.S. 397, 90 S.Ct. 1207, 25 L.Ed.2d 442 (1970). I find myself in agreement with Judge Gurfein that "the most appropriate course for the district judge is to first face the statutory claim alone, since on it a three-judge court is not required and since a three-judge court, if convened, would have to face it first." Doe v. Lavine, 347 F.Supp. 357 at 359–360 (S.D.N.Y.1972). See also Doe v. Gillman, 347 F.Supp. 483 (N.D. Iowa 1972); Saddler v. Winstead, 327 F.Supp. 568 (N.D.Miss.1971); Connecti-

cut Union of Welfare Employees v. White, 55 F.R.D. 481 (D.Conn.1972).

The AFDC program, 42 U.S.C. § 601 et seq., is one of three major categorical public assistance programs established by the Social Security Act of 1935. Its purpose is the encouragement of "the care of dependent children in their own homes or in the homes of relatives by enabling each State to furnish financial assistance and rehabilitation and other services" to such children. 42 U.S.C. § 601. The dependent child is defined, at 42 U.S.C. § 606(a), as one "who has been deprived of parental support or care by reason of the death, continued absence from the home, or physical or mental incapacity of a parent." [9]

§ 606(a) was first carefully scrutinized by the Supreme Court in King v. Smith, 392 U.S. 309, 88 S.Ct. 2128, 20 L.Ed.2d 1118 (1968). At issue there was an Alabama regulation denying AFDC assistance to the children of any mother (1) who lived with a man; (2) who was visited frequently by a man "for the purpose of cohabiting"; or (3) who cohabited with a man even outside her children's home. Under the Ala-

bama scheme it was irrelevant whether the man was legally obligated to support the children, and equally irrelevant whether he did in fact make any contribution toward their support. The State of Alabama argued before the Court that its regulation simply further refined the definition of "absent parent" under § 606(a); it further contended that its regulation significantly reduced the welfare caseload, discouraged sexual intercourse, and put "informal" families on the same footing as other families. The Court rejected all of these contentions. It found it "inconceivable . . . that Alabama is free to discourage immorality and illegitimacy by the device of absolute disqualification of needy children." It further concluded that "Congress intended the term 'parent' in . . . 42 U.S.C. § 606(a), to include only those persons with a legal duty of support." The Court there struck down Alabama's regulation because it defined "parent" in a manner inconsistent with the federal statute.

The Court's exegesis of § 606(a) in King v. Smith was codified in 45 C.F.R. § 203.1.[10] That provision defined "par-

9. 42 U.S.C. § 606(a) reads in full as follows: "(a) The term 'dependent child' means a needy child (1) who has been deprived of parental support or care by reason of the death, continued absence from the home, or physical or mental incapacity of a parent, and who is living with his father, mother, grandfather, grandmother, brother, sister, stepfather, stepmother, stepbrother, stepsister, uncle, aunt, first cousin, nephew, or niece, in a place of residence maintained by one or more of such relatives as his or their own home, and (2) who is (A) under the age of eighteen, or (B) under the age of twenty-one and (as determined by the State in accordance with standards prescribed by the Secretary) a student regularly attending a school, college, or university, or regularly attending a course of vocational or technical training designed to fit him for gainful employment;"

10. 45 C.F.R. § 203.1 is set out in substance in Lewis v. Martin, 397 U.S. 552 at p. 556, 90 S.Ct. 1282 at p. 1284, 25 L.Ed.2d 561 (1970). It has been succeeded by 45 C.F.R. § 233.90(a), which incorporates its predeces-

sor with relatively few changes. § 233.90(a) reads as follows:

"(a) *State plan requirement.* A State plan under title IV-A of the Social Security Act must provide that the determination whether a child has been deprived of parental support or care by reason of the death, continued absence from the home, or physical or mental incapacity of a parent, or (if the State plan includes such cases) the unemployment of his father, will be made only in relation to the child's natural or adoptive parent, or in relation to the child's step-parent who is ceremonially married to the child's natural or adoptive parent, and is legally obligated to support the child under State law or general applicability which requires stepparents to support stepchildren to the same extent that natural or adoptive parents are required to support their children. Under this requirement, the inclusion in the family, or the presence in the home, of a "substitute parent" or "man-in-the-house" or any individual other than one described in this paragraph is not an acceptable basis for a finding of ineligibility or for assuming the availabilty of income by

ent" in accordance with the Court's interpretation and further provided that in determining a child's financial eligibility, a State could consider "only such net income as is actually available for current use on a regular basis." In *Lewis v. Martin*, 397 U.S. 552, 92 S.Ct. 1282, 25 L.Ed.2d 561 (1970), the Court had occasion to consider these new regulations, and that decision has a readily apparent relevance for the instant case. That case presented a challenge to a California law providing that welfare payments to children who lived with their mother and stepfather "or an adult male person assuming the role of spouse" (MARS) shall be computed after consideration is given to the income of the stepfather or MARS. The Court noted (without explicitly adverting to the Due Process Clause of the Fourteenth Amendment) that this statute conclusively presumed that a child's needs were reduced by the income available from the man in the house whether or not such income was used to meet these needs. It upheld 45 C.F.R. § 203.1 as a reasonable exercise of HEW's administrative judgment and held that "[i]n the absence of proof of actual contribution, California may not consider the child's 'resources' to include either the income of a nonadopting stepfather who is not legally obligated to support the child as is a natural parent, or the income of a MARS—whatever the nature of his obligation to support." 397 U.S. at 559–560, 90 S.Ct. at 1286. The *Lewis* case has frequently been invoked by lower federal courts to invalidate state statutes which reduce AFDC grants to reflect the support supposedly provided by a stepfather or "man in the house." Rosen v. Hursh, 464 F.2d 731 (8th Cir. 1972); Gilliard v. Craig, 331 F.Supp. 587 (W.D.N.C.1971), affd., 409 U.S. 807, 93 S.Ct. 39, 34 L.Ed.2d 66 (1972);

Gaither v. Sterrett, 346 F.Supp. 1095 (N.D.Ind.1972), affd., 409 U.S. 1070, 93 S.Ct. 688, 34 L.Ed.2d 660 (1972). See also, Reyna v. Vowell, 470 F.2d 494 (5th Cir. 1972); Solman v. Shapiro, 300 F. Supp. 409 (D.Conn.1969), affd., 396 U.S. 5, 90 S.Ct. 25, 24 L.Ed.2d 5 (1969).

In the case at bar plaintiff argues that 18 N.Y.C.R.R. § 351(a)(3)(iv) and § 352.30(c) and (d) are inconsistent with 45 C.F.R. § 233.90. She claims that these statutes, by effecting a *pro rata* reduction in the rental stipend because of the presence of a lodger, conclusively presume that the lodger is contributing to the family's income, whether or not he can or does make such a contribution. Indeed, the hearing examiner's decision specifically included the following finding: "The record establishes that the man residing with appellant [Mrs. Hurley] was not willing to assume responsibility for the appellant or her children of which he is not the acknowledged or adjudicated father. In addition, no contribution is made by the lodger to the appellant." Plaintiff argues that the state statutes which effect a reduction in the rental stipend in disregard of such circumstances violate the policies enunicated in the *King* and *Lewis* decisions and embodied in 45 C. F.R. § 233.90.

Defendants, unable to distinguish those cases convincingly, offer but one argument in rebuttal. They contend that the only purpose of the challenged statutes is to prevent the allocation of AFDC funds to non-eligible persons. The regulations "merely pro rate the rent among the eligible persons and compute the shelter allowance accordingly, leaving the lodger and non eligible to pay his own way." [11] It would be unfair, the defendants imply, to permit a male lodger, who need not have qualified

---

the State. In establishing financial eligibility and the amount of the assistance payment, only such net income as is actually available for current use on a regular basis will be considered, and the income only of the parent described in the

first sentence of this paragraph will be considered available for children in the household in the absence of proof of actual contributions."

11. Defendants' Memorandum of Law, pp. 22–23.

for public assistance, to share in the family's rental stipend. In order to prevent state subsidy of an ineligible recipient, the argument continues, the stipend must simply be reduced by the lodger's proportionate share.

I find the defendants' argument utterly unpersuasive and hold that the challenged regulations are inconsistent with 45 C.F.R. § 233.90. Despite the defendants' professed concern that ineligibles not receive a rental stipend, the inevitable result of these regulations is to reduce, perhaps drastically, the stipend for those who are eligible. In the case of a mother with one child, for example, the presence of a non-contributing male lodger would reduce the rental stipend by 33⅓%. This devastating reduction means in practice that rental payments must be met out of that portion of the welfare stipend allotted for food and clothing.

The regulations thus conflict directly with § 233.90, a portion of which states: "[u]nder this requirement, the inclusion in the family, or the presence in the home, of a 'substitute parent', or 'man in the house', or any individual other than that described in this paragraph is not an acceptable basis for a finding of ineligibility or for assuming the availability of income by the state." Despite the defendants' protestations to the contrary, a *pro rata* reduction does indeed assume that the male lodger will pay his own way, whether or not he actually does. That is precisely the assumption found impermissible in *King* and *Lewis*.

It should also be noted that the regulations here under scrutiny are in one sense far cruder than were those at issue in Lewis v. Martin, supra. The California statutes at least took into account the income of the stepfather or MARS in computing the stipend payable to the family. The New York regulations reduce the rental stipend *regardless* of the lodger's income. Hence children who could qualify for a full stipend under the California plan (i. e., if the MARS in fact had no income) would

have their rental stipend reduced under the New York scheme. The Supreme Court found the California regulations not calibrated carefully enough to consider income actually available to the child. These New York statutes, I find, are even less sensitive instruments.

This is not the first attempt by a state to reduce a shelter allowance on the theory that the cohabitation of eligibles and non-eligibles makes the state responsible for only a proportionate share of the rent. In Boucher v. Minter, noted at page 192, supra, the Massachusetts statute operated similarly. The court there perceptively identified the fallacy in the reasoning of the statute:

"Although she has become a member of her new husband's family, the mother remains the head of a family, distinct for purposes of AFDC, comprised of herself and her children and is no less logical a conduit for shelter payments for the children if they in fact remain in need. That family unit remains unchanged since the stepfather does not join it in law; and if he does not join it in fact, by economic participation in its expenses, there is no basis in law or fact for an irrebuttable presumption that the shelter needs of the children have not continued despite the remarriage."

That flaw inheres in the New York regulations as well. See also, Jenkins v. Georges, 312 F.Supp. 289 (W.D.Pa. 1969); Owens v. Parham, 350 F.Supp. 598 (N.D.Ga.1972).

In conclusion, then, I find that 18 N.Y.C.R.R. § 352.31(a)(3)(iv) and § 352.30(c)(d) are inconsistent with 45 C.F.R. § 233.90 and thus violative of the Supremacy Clause of the Constitution. Accordingly, an appropriate injunction shall issue against their enforcement.

## V.

Two matters only remain for resolution. The first is the motion by Phyllis D'Alessio and Loretta Clark to intervene pursuant to Rule 24(b)(2) of the Feder-

al Rules.[12] Little would be gained by setting forth the proposed intervenors' backgrounds, for they are in all relevant details similar to that of Mrs. Hurley. Both are mothers receiving AFDC payments who have lost contact with the fathers of their children, and both have lived or are now living with men with whom they wish to reside on a permanent basis. Mrs. Clark has already received a Fair Hearing and suffered a *pro rata* reduction in her stipend. Mrs. D'Alessio has merely been threatened with a reduction.

A motion under Rule 24(b)(2) is addressed to the discretion of the district court, Lipsett v. United States, 37 F.R.D. 549 (S.D.N.Y.1965), appeal dismissed, 359 F.2d 956 (2nd Cir. 1966), and we are continually reminded that the rule should be liberally construed. Peterson v. United States, 41 F.R.D. 131 (D.Minn.1966). However, I believe that the rule should be construed in accordance with its underlying purpose, which is the prevention of a multiplicity of lawsuits involving common questions of law or fact. Reich v. Webb, 336 F.2d 153 (9th Cir. 1964), cert. denied, 380 U.S. 915, 85 S.Ct. 890, 13 L. Ed.2d 800 (1965). That purpose is already satisfied where, as here, the proposed intervenors fall within a class action designation. Consequently, the liberality with which the rule is customarily construed must give way to considerations of judicial economy and the avoidance of the confusion caused by multiple claimants. I have therefore concluded that where a suit has been designated a class action, admitting intervenors *who raise no new issues* and who fall within the class merely clutters the action unnecessarily.[13] See Allen Calculators, Inc. v. National Cash Register Co., 322 U.S. 137, 64 S.Ct. 905, 88 L.Ed. 1188 (1944). I understand Rule 23(d) at least to suggest that to intervene in a class action, applicants must show more than mere identity of questions of fact and law. Were that provision construed otherwise, it would mean that any member of the class, *ipso facto,* has a right to intervene and litigate the action fully. Such a construction would render class actions just as unmanageable as some are wont to fear them.[14]

I have concluded that the proposed intervenors here have not made a showing sufficient to justify their intervention; they have done nothing more than demonstrate factual and legal claims in common with the class. There is no danger that the case will become

12. Rule 24(b):

"(b) *Permissive Intervention.* Upon timely application anyone may be permitted to intervene in an action: (1) when a statute of the United States confers a conditional right to intervene; or (2) when an applicant's claim or defense and the main action have a question of law or fact in common. When a party to an action relies for ground of claim or defense upon any statute or executive order administered by a federal or state governmental officer or agency or upon any regulation, order, requirement, or agreement issued or made pursuant to the statute or executive order, the officer or agency upon timely application may be permitted to intervene in the action. In exercising its discretion the court shall consider whether the intervention will unduly delay or prejudice the adjudication of the rights of the original parties."

13. By the same reasoning, permissive intervention is most appropriate where the court has determined a case unsuitable for class action treatment. Thus in Doe v. Lavine, 347 F.Supp. 357 (S.D.N.Y.1972), Judge Gurfein granted motions to intervene by eight persons while finding that factual discrepancies precluded a class action designation. Similarly, Judge Mansfield in Boone v. Wyman, 295 F.Supp. 1143 (S.D.N.Y.1969), affd., 412 F.2d 857 (2nd Cir. 1969), cert. denied, 396 U.S. 1024, 90 S.Ct. 600, 24 L.Ed.2d 518 (1970), permitted intervention under Rule 24(b)(2) but expressed doubt as to whether the prerequisites for a class action existed.

14. Some courts have permitted intervention in class actions by applicants raising the same issues, and retaining the same attorneys, as the named plaintiffs. Epstein v. Weiss, 50 F.R.D. 387 (E.D.La.1970); Hicks v. Crown Zellerbach, 49 F.R.D. 184 (E.D. La.1968). The underlying rationale there appears to be that in such circumstances it hardly makes any difference whether intervention is permitted or denied.

moot as to the named plaintiff, a circumstance which has been found to justify intervention. Gaddis v. Wyman, 304 F.Supp. 713 (S.D.N.Y.1969). Nor is there any contention that the proposed intervenors' interests will be prejudiced or impaired by inadequate representation on the part of the named plaintiff. Rolle v. New York City Housing Authority, 294 F.Supp. 574 (S.D.N.Y.1969); Gabriel v. Standard Fruit & S. S. Co., 448 F.2d 724 (5th Cir. 1971). There was but one factor weighing in favor of their intervention. Both Mrs. Clark and Mrs. D'Alessio, because they were confronted with the imminent loss of welfare benefits, sought preliminary injunctions. Mrs. Hurley, who had formerly suffered a reduction but was now receiving her full stipend, did not. At oral argument, however, the representative of the Attorney General's office agreed that the stipends of the proposed intervenors would not be reduced during the pendency of this motion. Their motions for preliminary injunctions were accordingly deemed withdrawn. Had the Attorney General not thus graciously acceded to this court's request, the intervention of the two additional parties would have served a legitimate need in protecting the interests of that portion of the class facing an immediate loss of benefits. In the present posture of the case, the presence of the intervenors serves no discernible purpose, and their application to intervene is accordingly denied.

### VI.

In addition to injunctive relief, plaintiff has also sought an order allowing her retroactive welfare payments for the months in which her stipend was improperly reduced. The question of retroactive welfare benefits is, at the moment, an unusually delicate one for the district judges of this Circuit. In Rothstein v. Wyman, 467 F.2d 226 (2nd Cir. 1972), cert. denied, 411 U.S. 921, 93 S. Ct. 1552, 36 L.Ed.2d 315 (1973), our Court of Appeals, following Ford Motor Co. v. Department of the Treasury of Indiana, 323 U.S. 459, 65 S.Ct. 347, 89 L.Ed. 389 (1945), held that the Eleventh Amendment foreclosed a court from directing the retroactive payment of public assistance benefits. This view has its adherents. See Westberry v. Fisher, 309 F.Supp. 12 (D.Me.1970); Francis v. Davidson, 340 F.Supp. 351 (D.Md.1972); Boucher v. Minter, supra, 349 F.Supp. at 1246, fn. 6.

On the other hand, four different three judge courts have granted the payment of retroactive benefits, and each of those decisions was affirmed summarily by the Supreme Court. Gaddis v. Wyman, 304 F.Supp. 717 (S.D.N.Y.1969), affd. sub nom. Wyman v. Bowens, 397 U.S. 49, 90 S.Ct. 813, 25 L.Ed.2d 38 (1970); Shapiro v. Thompson, 270 F. Supp. 331 (D.Conn.1967), affd., 394 U. S. 618, 89 S.Ct. 1322, 21 L.Ed.2d 637 (1969) [15]; Zarate v. State Dept. of Health and Rehabilitative Services, 347 F.Supp. 1004 (S.D.Fla.1971), affd., 407 U.S. 918, 92 S.Ct. 2462, 32 L.Ed.2d 803 (1972); Sterrett v. Mothers and Childrens Rights Organization (N.D.Ind. 1972), affd., 409 U.S. 809, 93 S.Ct. 68, 34 L.Ed.2d 70 (1972). The Gaddis and Shapiro decisions antedated the Second Circuit's decision in Rothstein but the court did not regard them as binding precedents on the Eleventh Amendment question. Rather, Judge McGowan, speaking for the court, stated that the Supreme Court had not "as yet addressed itself specifically and authoritatively to this issue." Given this view of the value of the summary affirmance, it is unlikely that the decision of the Court of Appeals would have been in any way altered by the affirmances in Zarate and Sterrett.

It is generally thought that a summary affirmance is a decision on the merits having precedential value. See Cincinnati, New Orleans & Texas Pacific Ry. Co. v. United States, 400 U.S. 932, 91 S. Ct. 235, 27 L.Ed.2d 240 (1970) (White,

---

15. Shapiro v. Thompson was not, of course, a summary affirmance. But the Court made no mention of retroactive welfare benefits in its opinion, which can thus be deemed a summary affirmance on that point.

J., dissenting); Barton v. Sentner, 353 U.S. 963, 77 S.Ct. 1047, 1 L.Ed.2d 901 (1957) (Burton and Clark, JJ., dissenting); United States ex' rel. Fein v. Deegan, 410 F.2d 13 (2nd Cir.), cert. denied, 395 U.S. 935, 89 S.Ct. 1997, 23 L. Ed.2d 450 (1969); Doe v. Hodgson, 344 F.Supp. 964 (S.D.N.Y.1972), affd., 478 F.2d 537 (2nd Cir. 1973); Stern and Gressman, Supreme Court Practice 197 (4th ed. 1969). Nevertheless, the *Rothstein* court was obviously aware that the Eleventh Amendment defense had not been considered at length by the district courts in *Gaddis* and *Shapiro* (nor was it in *Zarate* or *Sterrett*). The court may then have concluded that, even though the question of retroactive benefits had technically been before the Supreme Court in those cases, the new gloss placed on the problem by the Eleventh Amendment defense had not. Of course, if the import of the court's remark that the Supreme Court "has not yet come to grips" with the question be taken literally, it suggests that a summary affirmance has no precedential value whatever. See Dillenburg v. Kramer, 469 F.2d 1222 (9th Cir. 1972).

The matter now however appears ripe for determination by the Supreme Court. In Jordan v. W,eaver, 472 F.2d 985 (7th Cir. 1973), the Seventh Circuit concluded (a) that the prior Supreme Court affirmances were entitled to full precedential force; (b) that at all events, the Eleventh Amendment is no bar to the payment of retroactive benefits; and (c) that even if the Eleventh Amendment were a bar, Illinois had "constructively consented" to such actions. The Supreme Court has granted certiorari, 412 U.S. 937, 93 S.Ct. 2776, 37 L. Ed.2d 398 (1973) and obviously will address the problem in the coming term.

Meanwhile, however, as a district judge I consider myself bound both by the Second Circuit's construction of the Eleventh Amendment and by its view of the precedential force of the various summary affirmances. Although suits by welfare recipients are numerous, the question of the Eleventh Amendment as a defense to the payment of retroactive benefits has been treated but rarely. I therefore regard the *Rothstein* decision as authoritative and accordingly deny plaintiff's motion for the payment of such benefits here.

In conclusion, plaintiff's motion that this proceed as a class action is granted. Plaintiff's motion for summary judgment is granted to the extent that an injunction shall issue permanently enjoining the enforcement of 18 N.Y.C.R.R. § 352.31(a)(3)(iv) and § 352.30(c) and (d). Plaintiff's motion is denied to the extent that it seeks an order directing the payment of retroactive welfare payments, and that portion of the complaint is dismissed. Defendants' motion to dismiss for failure to state a cause of action is denied, as is its alternative motion for summary judgment. The motions of Clark and D'Alessio to intervene are also denied.

The parties are directed to settle an order on notice providing for an appropriate form of injunctive relief.